## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIN YATES, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br> v.<br><br>EVERNORTH HEALTH, INC. and MDLIVE, INC.,<br><br>   Defendants. | Case No. 2:25-cv-02773-PD |

## DEFENDANTS EVERNORTH HEALTH, INC. AND
## <u>MDLIVE, INC.'S MOTION TO DISMISS</u>

Defendants Evernorth Health, Inc. and MDLIVE, Inc. move pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Counts I and II

of the Complaint.  In Support of this Motion, Defendants incorporate by reference

the accompanying Memorandum of Law.  A proposed form of Order is attached.

Dated:    August 11, 2025

By: /s/ Katherine E. Driscoll

Katherine E. Driscoll (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
KDriscoll@mofo.com

Joe Nguyen (93638)
Bridget C. Giroud (321289)
STRADLEY RONON STEVENS & YOUNG LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Facsimile: (215) 564-8120
JNguyen@stradley.com
BGiroud@stradley.com

*Counsel for Defendants*
*Evernorth Health, Inc. and MDLIVE, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIN YATES, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>EVERNORTH HEALTH, INC. and MDLIVE, INC.,<br><br>       Defendants. | Case No. 2:25-cv-02773-PD |

## [PROPOSED] ORDER GRANTING EVERNORTH HEALTH, INC. AND MDLIVE, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Before the Court is Defendants Evernorth Health, Inc. and MDLIVE, Inc.'s Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Having considered the papers filed in support of and in opposition to the motion, the arguments of counsel, the pleadings and papers on file in this action, and all other matters properly before the Court, and good cause appearing,

IT IS HEREBY ORDERED that the Motion to Dismiss Plaintiff's Complaint is GRANTED in its entirety without leave to amend under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as Plaintiff lacks standing and each of Plaintiff's causes of action fails to state a claim upon which relief can be granted.

IT IS SO ORDERED.

Dated:        August _____, 2025        Hon. Paul S. Diamond

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERIN YATES, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-02773-PD |
| Plaintiff, | |
| v. | |
| EVERNORTH HEALTH, INC. and MDLIVE, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT DEFENDANTS EVERNORTH HEALTH, INC. AND MDLIVE, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND.................................................................2

    A.    The Complaint ...........................................................................2

    B.    The Online Technologies Deployed From A Third-Party
          Website ........................................................................................4

    C.    MDLIVE and Cigna Disclose the Use of Online Technologies ..........5

III.  LEGAL STANDARD ...........................................................................9

IV.   ARGUMENT........................................................................................10

    A.    Plaintiff Fails to Establish Article III Standing.................................10

    B.    Plaintiff's Allegations Are Impermissibly Vague.............................13

    C.    Plaintiff's ECPA Claim Fails on Multiple Grounds .........................15

          1.    MDLIVE Was a Party to the Communications .....................15

          2.    Plaintiff's Aiding and Abetting Theory Fails .........................17

    D.    Both Plaintiff's Wiretapping Claims Fail on Other Grounds ...........18

          1.    Plaintiff Consented to the Online Technologies.....................18

          2.    Plaintiff's Claims Are Time-Barred ........................................21

          3.    No "Contents" of Communications Were Disclosed..............22

V.    CONCLUSION.....................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
 738 F. Supp. 3d 780 (N.D. Tex. 2024) ...............................................13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).........................................................9, 10, 13

*Ballentine v. United States*,
 486 F.3d 806 (3d Cir. 2007) ..........................................................9

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007).........................................................9, 10, 14

*Commonwealth v. Byrd*,
 235 A.3d 311 (Pa. Super Ct. 2020).................................................19

*Checchia v. SoLo Funds, Inc.*,
 771 F. Supp. 3d 594 (E.D. Pa. 2025).............................................19

*Cook v. Gamestop, Inc.*,
 No. 23-2574, 2025 U.S. App. LEXIS 19955 (3d Cir. Aug. 7, 2025)................12

*Davis v. Zirkelbach*,
 149 F.3d 614 (7th Cir. 1998) .........................................................22

*Del. River Waterfront Corp. v. Wellspring Software Inc.*,
 No. 22-1905, 2022 WL 17869139 (E.D. Pa. Dec. 22, 2022) ...........................19

*In re Facebook Priv. Litig.*,
 791 F. Supp. 2d 705 (N.D. Cal. 2011)..............................................16

*Goldstein v. Costco Wholesale Corp.*,
 559 F. Supp. 3d 1318 (S.D. Fla. 2021)..............................................24

*In re Google Cookie Placement Consumer Priv. Litig.*,
 806 F.3d 125 (3rd Cir. 2015) .............................................17, 23, 24

*Katz-Lacabe v. Oracle Am., Inc.*,
 No. 22-cv-04792-RS, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024)................16

*Kirch v. Embarq Mgmt. Co.*,
   702 F.3d 1245 (10th Cir. 2012) ............................................................18

*Kurowski v. Rush Sys. for Health*,
   659 F. Supp. 3d 931 (N.D. Ill. 2023)....................................................16

*Kury v. Abbott Labs., Inc.*,
   No. 11-803 FLW, 2012 WL 124026 (D.N.J. Jan. 17, 2012)..............13

*Lake v. Arnold*,
   232 F.3d 360 (3d Cir. 2000) ..................................................................21

*Lasche v. New Jersey*,
   No. 20-2325, 2022 WL 604025 (3d Cir. Mar. 1, 2022) ......................13

*Lincoln Nat'l Life Ins. Co. v. Snyder*,
   722 F. Supp. 2d 546 (D. Del. 2010)........................................................5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).................................................................................9

*Lynch v. Express Scripts Holding Co.*,
   No. 23-cv-01170-AMO, 2024 WL 3226793 (N.D. Cal. June 28, 2024) ...........15

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
   No. 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023)................12

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ..................................................................15

*In re Nickelodeon*,
   MDL No. 2443 (SRC), 2014 WL 3012873 (D.N.J. July 2, 2014) ....................24

*Parkell v. Markell*,
   622 F. App'x 136 (3d Cir. 2015) ..........................................................10

*Peavy v. WFAA-TV, Inc.*,
   221 F.3d 158 (5th Cir. 2000) ................................................................18

*Pena v. GameStop, Inc.*,
   670 F. Supp. 3d 1112 (S.D. Cal. 2023)................................................16

*Popa v. Harriet Carter Gifts, Inc.*,
  No. 2:19-cv-450, 2025 WL 896938 (W.D. Pa. Mar. 24, 2025) ........................20

*Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*,
  136 F.4th 456 (3d Cir. 2025) ...............................................10

*Santoro v. Tower Health*,
  No. 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) ........................ 11-12

*Smart v. Main Line Health*,
  No. 22-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024) ...............................11

*Sparshott v. Feld Ent., Inc.*,
  311 F.3d 425 (D.C. Cir. 2002)...............................................22

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)........................................................10

*Wiggins v. Lab'y Corp. of Am. Holdings*,
  No. 24-0648, 2024 WL 4476646 (E.D. Pa. 2024)..............................21

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...............................................24

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ...............................................23

## Statutes & Rules

18 U.S.C.
  § 2510....................................................................2, 22
  § 2511....................................................................15, 17
  § 2520....................................................................17, 18, 21

18 Pa. Cons. Stat. Ann.
  § 5701.....................................................................3
  § 5702....................................................................22

Fed. R. Civ. P.
  8........................................................................9, 13, 14
  12.......................................................................8, 9, 13

Defendants Evernorth Health, Inc. and MDLIVE, Inc. (together, "MDLIVE") submit this Memorandum of Law in support of their Motion to Dismiss Counts I and II of the Complaint.

## I.    INTRODUCTION

Plaintiff launches broad, generic challenges to MDLIVE's use of commonplace online analytic tools, but never alleges how the use of these tools implicated *her* data or caused *her* harm.  Plaintiff offers only conclusory allegations that MDLIVE embedded analytic tools somewhere on its website, which allegedly allowed third parties to capture unspecified information regarding the activity of website visitors.  Such allegations fail to establish that *Plaintiff* has standing and are insufficient to state a claim for which relief may be granted.

For the Google and Meta technologies at issue ("Online Technologies") to capture user information, they must be both embedded on the specific webpage where the information was entered and configured to capture that information. Plaintiff offers only two vague sentences regarding her use of MDLIVE's services, alleging that she clicked on a link for telehealth services, searched for treatment options, and scheduled an unspecified appointment.  Plaintiff fails to allege that she interacted with any specific webpages where Online Technologies were allegedly embedded, identify any protected health information she allegedly entered on MDLIVE's website, or explain how any information she communicated on pages

with Online Technologies was confidential.  Plaintiff's barebones allegations fail to establish standing, meet federal pleading standards, or state a viable claim.

Plaintiff's claims are further insufficient because (1) the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*, is a one-party consent statute, and MDLIVE's consent to the deployment of the Online Technologies on its own website are fatal to Plaintiff's ECPA claim; (2) Plaintiff consented to the use of Online Technologies when she registered for MDLIVE and myCigna accounts; (3) her claims are time-barred because Plaintiff should reasonably have known that Online Technologies were utilized within the first nine months of her use of MDLIVE's website because MDLIVE provided ample notice; and (4) Plaintiff fails to allege that "contents" of communications were captured, as required under both of the statutes at issue.

MDLIVE respectfully asks the Court to dismiss the Complaint in its entirety.

## II.   FACTUAL BACKGROUND

### A.   The Complaint

Evernorth is a subsidiary of Cigna Healthcare and is responsible for, among other things, Cigna's health services business.  (Class Action Complaint ("Compl.") ¶ 3, ECF No. 1.)  MDLIVE is a subsidiary of Evernorth that operates www.mdlive.com and provides telehealth services to Cigna members and users who register for an MDLIVE account directly.  (*Id.* ¶ 2.)  Plaintiff alleges that she

is a Cigna member who utilized an online patient portal ("myCigna") to access services, including telehealth services provided through MDLIVE. (*Id.* ¶¶ 1, 8.)

Plaintiff alleges that she accessed MDLIVE's telehealth platform to schedule unidentified medical appointments between August 28, 2022, and November 22, 2023. (*Id.* ¶ 8.) The only allegations in the Complaint that Plaintiff interacted with MDLIVE's website in any manner are that she allegedly logged into myCigna, "clicked on a link for [unidentified] telehealth services offered through MD Live," was taken to "the scheduling portal" on MDLIVE's website, and "she searched for [unidentified] treatment options and scheduled her medical appointment." (*Id.*)

Plaintiff does not identify what information she entered on MDLIVE's website or allege that she had any substantive communications on the website that were transmitted to any third parties. Plaintiff also does not allege how she was harmed. Instead, the Complaint generally alleges the obligations of covered healthcare providers under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (*id.* ¶¶ 16-30); discusses the functionality and deployment of Online Technologies (*id.* ¶¶ 31-79); and alleges that Online Technologies are embedded in a dermatology services flow that she does not allege that she engaged with (*id.* ¶¶ 80-89) (*see infra* § II.B).

Relying on these threadbare allegations, Plaintiff asserts two claims against MDLIVE for violations of (1) ECPA, and (2) the Pennsylvania Wiretapping and

Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons. Stat. § 5701 *et seq.*
Plaintiff also relies on her insufficient allegations to allege a nationwide putative
class of all persons across the United States who scheduled an appointment
through MDLIVE's website, as well as a Pennsylvania subclass of all persons who
had their "protected personal and medical information" disclosed through the
Website to the Third Parties.   (Compl. ¶ 90.)

## B.    The Online Technologies Deployed From A Third-Party Website

The Complaint sets forth allegations as to how and where the Online
Technologies deploy.  (*Id.* ¶¶ 86-89.)  The figures identifying purported use of the
Online Technologies do not support Plaintiff's claim that protected information
was captured, and even if they did, they stem from searches for dermatology
services apparently triggered from a third-party website.  (*Id.*, Figs. 3, 5.)

Of the three specific allegations included in the Complaint alleging that the
Online Technologies were triggered, two clearly relate to a website not owned by
MDLIVE.  In Figure 3, which allegedly demonstrates an event triggering the Meta
pixel, the metadata field "dl" means Direct Link, which is the webpage on which
the pixel triggered.  (Cheung Decl., Ex. A.)[1]  In this event, the dl field identifies

_____

[1] As discussed in the accompanying Request for Judicial Notice, the Court should
incorporate by reference or take judicial notice of MDLIVE's websites
(www.mdlive.com (Declaration of Tiffany Cheung ("Cheung Decl."), Ex. I) and
my.cigna.com (Cheung Decl., Ex. D)), as well as MDLIVE's Privacy Notice
(Cheung Decl., Ex. H) and Cigna's Website Privacy Notice (Cheung Decl., Ex. F),

patient.dermatologistoncall.com as the source of the event occurrence. (Compl. ¶ 86, Fig. 3.) Similarly, for Google Analytics, the metadata field "dl" means document location, and indicates the location where the pixel triggered. (Cheung Decl., Ex. B.) In the event allegedly captured in Figure 5, the "dl" field allegedly showing the URL from which Google Analytics launched also identifies patient.dermatologistoncall.com. (Compl. ¶ 87, Fig. 5.)

In Figure 4, which shows the alleged triggering of the DoubleClick tool, the event also relates to scheduling a dermatology appointment. (*Id*. ¶ 87, Fig. 4.) But nowhere does Plaintiff allege—or provide facts suggesting—that the information captured or transmitted via the DoubleClick tool included any protected health information and she does not allege to have made a dermatology appointment.

### C.    MDLIVE and Cigna Disclose the Use of Online Technologies

Plaintiff alleges that she is a Cigna member and that she accessed MDLIVE through her Cigna patient portal, myCigna. (Compl. ¶¶ 1, 8.) Plaintiff does not allege whether she also registered for a MDLIVE account directly. Regardless, whether she registered through myCigna and/or MDLIVE, at the time of

---

posted on its websites, including prior versions available via the Wayback Machine. *See Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 552 n.4 (D. Del. 2010) ("[I]f a contract or essential document, whose authenticity is not challenged, is the basis of a complaint, it is incorporated by reference and properly relied on by the court on a motion to dismiss.").

registration, she agreed to the websites' respective Terms of Use and Privacy
Policies, each of which discloses the use of the Online Technologies.

To register for a myCigna account, every user must acknowledge that they
have read and accept Cigna's Terms of Use and Privacy Policy during their
registration. (Cheung Decl., Ex. C (screenshot of myCigna user registration
flow).) If Plaintiff registered as she alleges, she agreed to Cigna's Terms of Use
and Privacy Policy. (*Id.*) Additionally, Cigna's Privacy Policy is available in the
footer of each page of myCigna in conspicuous white text against a dark grey
background through the link clearly labeled "Privacy." (Cheung Decl., Ex. D
(myCigna homepage).) Once a visitor clicks on "Privacy," they are brought to an
easy-to-follow webpage with privacy resources, including a link to the Website
Privacy Notice under the large section heading of "Privacy Information." (Cheung
Decl., Ex. E (Cigna Legal and Privacy Information Webpage).)

Cigna's Website Privacy Notice discloses the use of Online Technologies.
Specifically, the Notice states that Cigna's website "may use cookies, tags, and
other tracking mechanisms to track information about your use of [Cigna's]
Services, and to provide, customize, evaluate, and improve [Cigna's] Services."
(Cheung Decl., Ex. F (Cigna Privacy Notice at 6).) The Notice goes on to explain
that, in addition to cookies, the website uses "Clear GIFs, Pixel Tags and Other
Technologies," and defines those technologies. (*Id.*) The Notice also makes clear

6

that Cigna partners with "third-party ad networks, analytics, marketing partners, and others . . . to personalize content and display advertising" on the website, "as well as to manage [its] advertising on third-party Websites." (*Id.* at 7.)

Thus, as a myCigna account holder, Plaintiff agreed that Cigna "and these third-party ad companies may use cookies, pixel tags, and other tools to collect browsing and activity information" from the website, "as well as IP address, unique ID, cookie and advertising IDs, and other online identifiers." (*Id.*) She also agreed that Cigna "and these third-party ad companies use this information to provide you more relevant ads and content" on the website "and on third-party websites, and to evaluate the success of such ads and content." (*Id.*)

The same is true of users who access MDLIVE's services directly. When a www.mdlive.com website visitor selects "Create Account," they are directed to a screen where they agree to MDLIVE's Terms of Use and Privacy Policy. (Cheung Decl., Ex. G (Wayback Machine MDLIVE Registration, Aug. 12, 2022).) Here, Plaintiff alleges that she accessed MDLIVE's website in November 2023. (Compl. ¶ 8.) MDLIVE's Privacy Policy in place at that time makes clear that MDLIVE may use Online Technologies to capture certain information about visitors' activity on its website. (Cheung Decl., Ex. H (Wayback Machine Capture of Privacy Policy, Aug. 16, 2022).) Specifically, the Policy states that "[MDLIVE] and [its] service providers may use cookies, pixel tags, web beacons, and other technologies

to receive and store certain types of information whenever you interact with our
Website and Application through your computer or mobile device." (*Id.*)  It
explains that "[a] 'cookie' is a small piece of data sent from a website and stored
on the user's computer by the user's web browser while the user is browsing," and
instructs users that they "may refuse to accept browser cookies by activating the
appropriate setting on [their] browser." (*Id.*)  It also outlines that MDLIVE may
use "Google analytics … to collect certain information relating to your use of the
Website," and "[Meta] Pixel, a web analytics and advertising service." (*Id.*)

The Privacy Policy is also available on each page of MDLIVE's public
website labeled "Privacy Policy" in a conspicuous and persistent footer,
highlighted with light blue font on a dark gray background.  (Cheung Decl., Ex. I
(footer on https://www.mdlive.com/).)  And it is also available after a user is
logged in through the persistent footer under "MDLIVE Privacy Policy,"
highlighted with white font on a dark gray background.  (Cheung Decl., Ex. J
(footer on patient.mdlive.com).)

Although Plaintiff consented to the disclosure of limited record information
to enhance her online experience, Plaintiff does ***not*** allege she received a single
advertisement from either Cigna or MDLIVE connected to activity on either
website.  (*See generally* Compl.)

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court should dismiss a complaint for lack of subject matter jurisdiction if the plaintiff does not satisfy Article III standing. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Plaintiff, as the party seeking to invoke the Court's subject matter jurisdiction, has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) where, as here, the plaintiff fails to state a cognizable legal theory or has not alleged sufficient facts establishing that a claim is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[L]abels and conclusions" or "a formulaic recitation of the elements" do not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

If a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement

9

to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Parkell v. Markell*, 622 F. App'x 136, 141 (3d Cir. 2015) (per curiam) (allegations "equally consistent with lawful and [unlawful] behavior" are "insufficient to state a plausible claim"). The same is true for "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

## IV.    ARGUMENT

### A.    Plaintiff Fails to Establish Article III Standing

Plaintiff lacks Article III standing because she fails to allege an "injury in fact," having made no connection between the Online Technologies to her protected health information. Accordingly, her Complaint should be dismissed.

"To have standing, '[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136 F.4th 456, 461 (3d Cir. 2025) (citation omitted). "An injury in fact exists if a plaintiff has suffered 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Id*. (citation omitted). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).

Plaintiff cannot meet this standard.  Courts in the Third Circuit have held that plaintiffs lacked standing in circumstances nearly identical to those at issue here.  For example, *Smart v. Main Line Health* is instructive.  No. 22-5239, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024).  There, as here, plaintiff claimed that Main Line violated ECPA based solely on general allegations that plaintiff had entered protected health information on Main Line's website, "including requests for information about specific Main Line Health providers and locations, and information about specific health conditions, treatments, and services."  *Id.* at *1-3.  The court found such general allegations insufficient to establish standing:

> This Court cannot conclude from these general averments **what information Plaintiff actually communicated with Main Line Health via his web browsing and when exactly such information was communicated**. For example, Plaintiff has not alleged which specific web pages he clicked on for his medical condition or his history of treatment with Main Line Health. And although the Amended Complaint provides an example of a search by a hypothetical visitor to the Main Line Health webpage . . . , Plaintiff fails to state what specific HIPPA-protected [sic] information Plaintiff himself provided to Defendant via his browsing activity that was subsequently disclosed to Meta. **Without such factual allegations, the Amended Complaint consists of nothing more than bare-bone conclusions which are insufficient to withstand dismissal.**

*Id.* (emphasis added).  The court thus dismissed plaintiff's claims because plaintiff "[had] not alleged sufficient facts . . . to support an inference that Defendant disclosed its patients' individually identifiable health information."  *Id.*  Numerous courts are in accord.  *See, e.g.*, *Santoro v. Tower Health*, No. 22-4580, 2024 WL

1773371, at *3-5 (E.D. Pa. Apr. 24, 2024) (dismissing ECPA claim without specifics regarding what HIPAA-protected information from **plaintiffs** was captured); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-4674, 2023 WL 7017734, at *3 (E.D. Pa. Oct. 10, 2023) (dismissing ECPA claim based on vague allegations of intercepted communications).

Similarly, recent binding Third Circuit precedent found that plaintiff failed to allege a concrete harm when GameStop employed a third-party technology to capture her activity on its website because the disclosure of her browsing activity was not "remotely analogous to the harm caused by the tortious public dissemination of sensitive facts about another's private life." *Cook v. Gamestop, Inc.*, No. 23-2574, 2025 U.S. App. LEXIS 19955, at *10 (3d Cir. Aug. 7, 2025) (citations omitted). Moreover, like here, plaintiff in *GameStop* did not allege that **her** information was every publicized or publicly disclosed. *Id* at *12.

The same result should follow here. Plaintiff never alleges what, if any, protected health information *she* entered on MDLIVE's website; whether *she* interacted with webpages where Online Technologies were allegedly embedded; whether, how, or why any information *she* communicated on pages with Online Technologies, if any, was confidential; or how *she* was injured as a result. These omissions are fatal.

Plaintiff also fails to allege any actual harm resulted from MDLIVE's

conduct.  The Complaint's only reference to purported harm is a citation to general, hypothetical risks outlined in a bulletin posted by the U.S. Department of Health and Human Services that outlines guidance for the use of online tracking technologies for covered entities.  (Compl. ¶¶ 25-26.)  Setting aside that a portion of the guidance was declared unlawful and vacated, *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 806 (N.D. Tex. 2024), Plaintiff's generic allegations of harm are precisely the type of conclusory allegations that courts routinely disregard on a motion to dismiss.  *See Kury v. Abbott Labs., Inc.*, No. 11-803 FLW, 2012 WL 124026, at *6 (D.N.J. Jan. 17, 2012) (finding "conclusory and vague allegations that Plaintiff suffered damages, mental anguish and pain and suffering" insufficient); *Lasche v. New Jersey*, No. 20-2325, 2022 WL 604025, at *3 (3d Cir. Mar. 1, 2022) (courts should "disregard" "allegations that are 'so threadbare or speculative that they fail to cross the line between the conclusory and the factual'") (quoting *Iqbal*, 556 U.S. at 790).

Plaintiff's Complaint should be dismissed in its entirety for lack of standing.

## B.    Plaintiff's Allegations Do Not State a Claim

The Complaint should independently be dismissed under Rule 12(b)(6) for failure to comply with Rule 8 for two reasons: (1) Plaintiff fails to specify what (if any) data *she* allegedly input into MDLIVE's website and if she did so on a page allegedly utilizing Online Technologies; and (2) Plaintiff inconsistently alleges that

the third-party providers of the Online Technologies were the "interceptors" of communications and also that MDLIVE "intercepted" communications.

The purpose of Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). Lacking fair notice and an opportunity to challenge the specifics of Plaintiff's claims, MDLIVE is left to speculate about what is at issue in this case.

Plaintiff does not allege the date on which she registered for a myCigna account, whether she also registered on MDLIVE's website, the personal or protected health information (if any) she purportedly input into MDLIVE's website, or which Online Technologies (if any) allegedly captured her information. Plaintiff's footnote expressing generalized privacy concerns does not relieve her from her obligations to plead with the requisite specificity to allow MDLIVE to defend itself in this litigation. Plaintiff could have filed a complaint with portions under seal, proceeded anonymously as "Jane Doe," or provided details about the treatment she sought, like many other named plaintiffs in similar lawsuits. To meet her burden of establishing that she has stated a claim, however, what Plaintiff cannot do is rely solely on conclusory allegations.

The Complaint also fails to put MDLIVE on sufficient notice as to which party allegedly intercepted Plaintiff's communications. (*Compare*, *e.g.*, Compl. ¶ 26 ("Defendants' unlawful conduct resulted in **third parties intercepting**

14

information regarding Plaintiff's and Class members' medical appointments on Defendants' Website.") (emphasis added), *with id.* ¶ 83 ("**Defendants intercepted** its patients' confidential information from its telehealth Website to monetize that data through targeted advertising.") (emphasis added).)  Without sufficient pleadings as to *who* allegedly intercepted Plaintiff's communications, MDLIVE is unable to properly defend itself in this litigation.  Both claims should be dismissed on this ground alone.  *See Lynch v. Express Scripts Holding Co.*, No. 23-cv-01170-AMO, 2024 WL 3226793, at *1 (N.D. Cal. June 28, 2024) (dismissing wiretapping claims for failure to "consistently allege the identity of the company responsible for the interception that is the subject of his complaint").

### C.    Plaintiff's ECPA Claim Fails on Multiple Grounds

#### 1.    MDLIVE Was a Party to the Communications

To state a claim under ECPA, Plaintiff must adequately allege that MDLIVE "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a).  However, consent by either party to the communication is a complete defense to an ECPA claim.  *Id*. § 2511(2)(d); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (holding plaintiff failed to state a viable wiretapping claim where defendant was either a party to the communication or a party consented).

As numerous courts in the Third Circuit and across the country have recognized in nearly identical cases, the consent of one party to the communication (*i.e.*, a website host) is a complete defense to an ECPA claim based on the host's use of an Online Technology.  As a court explained in a similar case against Oracle, "Oracle's customers chose to deploy Oracle's tools on their websites, and it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'" *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2024 WL 1471299, at *4 (N.D. Cal. Apr. 3, 2024) (citation omitted) (dismissing ECPA claim against Oracle as a software provider); *see also Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1117-18 (S.D. Cal. 2023) (dismissing claim against website host for same reason); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 937-38 (N.D. Ill. 2023) (same); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (same).

Here, Plaintiff concedes that MDLIVE was the intended recipient of any allegedly intercepted communications and that MDLIVE was necessarily a party to each communication.  (*E.g.*, Compl. ¶ 8 (describing Plaintiff's website activity as "her communications with Defendants")).  By "utilizing" and "embedding" the Online Technologies in its own website, MDLIVE necessarily consented to any alleged interception of its communications.  (Compl. ¶ 110.)  Plaintiff's ECPA claim must therefore be dismissed.

Plaintiff cites a statutory exception under ECPA where a "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." (Compl. ¶ 116 (citing 18 U.S.C. § 2511(2)(d)).) But this exception does not apply to the alleged *interception* itself; instead, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the *purpose* of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3rd Cir. 2015) (*"In re Google"*) (citation omitted) (emphasis added). Because Plaintiffs here cannot plead any such tortious or criminal act, the crime-fraud exception does not apply.

### 2.     Plaintiff's Aiding and Abetting Theory Fails

To the extent the Complaint alleges that Meta and Google, not MDLIVE, were the parties that allegedly intercepted Plaintiff's communications, this theory is not actionable under ECPA. (Compl. ¶¶ 6, 8, 33, 35, 48, 50, 54, 72, 73, 82, 84, 87, 88.) Insofar as Plaintiff alleges that MDLIVE is responsible for any communications purportedly intercepted by the Online Technology providers, this theory fails because ECPA does not recognize a private civil cause of action for aiding and abetting.

ECPA's private right of action is found in 18 U.S.C. § 2520, which creates a

scope of civil liability that is narrower than the criminal liability provision codified in Section 2511. Section 2520(a)'s plain, unambiguous language creates a private civil cause of action only against the person who engages in an unlawful interception, disclosure, or intentional use of wire, oral or electronic communication—not against any other person for procuring, enabling, or aiding and abetting another's interception of such. *See, e.g.*, *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) (holding that there is no civil ECPA claim for "procur[ing]" or "aiding and abetting" an interception); *see also Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same). When Congress enacted ECPA in 1986, it specifically excluded civil liability for procurement (or aiding and abetting), which previously existed under the 1968 predecessor to ECPA. *See Kirch*, 702 F.3d at 1246-47 (addressing the statutory distinctions between civil and criminal liability under ECPA).

Because ECPA does not provide a private cause of action against an entity that is alleged to have procured or aided and abetted another party to intercept a communication, Plaintiff's ECPA claim against MDLIVE for purportedly allowing Meta or Google to "intercept" her communications must be dismissed.

### D. Both Plaintiff's Wiretapping Claims Fail on Other Grounds

#### 1. Plaintiff Consented to the Online Technologies

Plaintiff's ECPA and WESCA claims also fail because Plaintiff, too,

consented to the use of the Online Technologies.  Her consent is dispositive.

Consent does not require actual knowledge of recording—if "the person being recorded 'knew or should have known[] that the conversation was being recorded'" and proceeded to make the communication, the person is deemed to have consented by conduct.  *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. Super Ct. 2020) (citation omitted).  The standard is one of a "reasonably intelligent person."  *Id*. (citation omitted).

A contract entered into on the internet is enforceable if it puts a website user on inquiry notice of the site's terms.  *Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 607 (E.D. Pa. 2025).  It is sufficient if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."  *Id.* (citation omitted); *see also Del. River Waterfront Corp. v. Wellspring Software Inc.*, No. 22-1905, 2022 WL 17869139, at *4 (E.D. Pa. Dec. 22, 2022) (enforcing terms of a clickwrap agreement, which "presents users with a message on his or her computer screen, requiring the user to manifest his or her assent to the terms of the . . . agreement by clicking on an icon") (citation omitted).  Here, Plaintiff affirmatively consented to the use of Online Technologies when she registered for accounts with myCigna and MDLIVE.  (*See supra* § II.C.)

19

Plaintiff also constructively consented to both policies when she was put on notice of the persistent footers on the myCigna and MDLIVE websites. (*Id.*) To this end, a recent ruling in a WESCA case in the Western District Court of Pennsylvania is directly on point. In *Popa v. Harriet Carter Gifts, Inc.*, the court held that plaintiff consented to the tracking technology at issue because defendant's privacy policy was clearly and conspicuously disclosed via a hyperlink placed in the persistent footer of every page on the website—an approach the court found to be "in line with common usage." No. 2:19-cv-450, 2025 WL 896938, at *10-11 (W.D. Pa. Mar. 24, 2025). The court emphasized that the hyperlink was labeled "Privacy Statement," highlighted in white text against a dark background, and was also accessible through the website's left-side drop-down menu. *Id.* In light of the easy access to the relevant terms, the court found that any website visitor "could have easily seen the link and understood exactly what it contained." *Id.* at *10.

Like in *Popa*, Plaintiff consented to the use of the Online Technologies. The Privacy Policy is embedded in the persistent footer of MDLIVE's website under the "MDLIVE Privacy Policy" hyperlink, and the hyperlink is conspicuous with white text against a dark background. (*Compare supra* § II.C *with Popa*, 2025 WL 896938, at *10-11.) The conspicuously hyperlinked Privacy Policy put Plaintiff on notice that MDLIVE's website may use "cookies and other tracking technologies," and that "[t]he information [MDLIVE] collect[s] may include

Personal Information or [MDLIVE] may maintain it or associate it with Personal

Information [MDLIVE] collect[s] in other ways or receive[s] from third parties."

(Cheung Decl., Ex. H (Privacy Policy).)

Because Plaintiff agreed that her activity on MDLIVE's website could be

recorded, each of her claims must fail.  *See Wiggins v. Lab'y Corp. of Am.*

*Holdings*, No. 24-0648, 2024 WL 4476646, at *8 (E.D. Pa. 2024) (finding that

plaintiffs agreed to relevant terms of service where they "had to check a box

indicating they 'have read, understand and agree to the [] Terms of Use and Web

Privacy Statement,'" where "[t]he text containing this affirmation [was] small but

legible," and where "the phrase 'Terms of Use' [was] marked in blue text as

typically indicates a hyperlink").

### 2.    Plaintiff's Claims Are Time-Barred

Plaintiff's claims should also be dismissed because she failed to file the

Complaint in advance of ECPA or WESCA's two-year statute of limitations.

For purposes of determining the date of accrual of a claim, "[t]he statute of

limitations begins to run from the time the cause of action accrued," meaning

"when the first significant event necessary to make the claim suable occurs."  *Lake*

*v. Arnold*, 232 F.3d 360, 366 (3d Cir. 2000) (citation omitted).  In construing

ECPA's two-year limitations period, *see* 18 U.S.C. § 2520(e), courts addressing

near identical claims to those raised by Plaintiff have held that "the statute bars a

suit if the plaintiff had such notice as would lead a reasonable person either to sue or to launch an investigation that would likely uncover the requisite facts." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 428-29 (D.C. Cir. 2002); *see also, e.g.*, *Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998) (holding that the limitations period accrues when the plaintiff is put "on inquiry notice that his rights might have been invaded").

Here, the Complaint alleges that Plaintiff used MDLIVE's website "between August 28, 2022 and November 22, 2023." (Compl. ¶ 8.) But since at least August 28, 2022, MDLIVE's Privacy Policy has disclosed that its website may use cookies or pixel technologies. (*Id.*; *see supra* § II.B; Cheung Decl., Ex. H (MDLIVE Privacy Policy).) Nonetheless, Plaintiff waited nearly three years after that disclosure to bring her claims against MDLIVE. As such, Plaintiff's claims must be dismissed because they are barred by ECPA's and WESCA's two-year statute of limitations.

### 3. No "Contents" of Communications Were Disclosed

Plaintiff's claims under ECPA and WESCA must be dismissed because they do not allege that MDLIVE intercepted the "contents" of her communications.

ECPA and WESCA both define "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8); Pa. Cons. Stat. Ann. § 5702. Courts routinely distinguish between "content" and

"record" information. *See, e.g.*, *In re Google*, 806 F.3d at 135-39 (addressing the distinctions between content and routing/record information); *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir. 2014) (in ECPA, "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication").

Plaintiff does not allege what "contents" the Online Technologies captured:

- **DoubleClick:** the Complaint discusses the history and purpose of the DoubleClick tool (Compl. ¶¶ 31-41), but it does not allege what information DoubleClick captures generally—let alone what it captured from Plaintiff. It merely states that the tool provides Google with the ability to "collect and analyze information about consumers' web behavior and deliver targeted advertising to select consumers based on their web habits." (*Id.* ¶ 37.)

- **Google Analytics:** the Complaint alleges that Google Analytics "can be installed onto websites to track page visits, button clicks, text entered into websites, and other actions taken by website visitors" (*Id.* ¶ 42), but it does not allege what information Google Analytics captured from Plaintiff.

- **Meta Pixel:** the Complaint alleges that the Meta Pixel *can* capture data such as "when a user visits a webpage, that webpage's Universal Resource Locator ('URL') and metadata, or when a user downloads a mobile application or makes a purchase," as well as "standard events" such as "what content a visitor views or purchases." (*Id.* ¶ 71.) But it does not allege what information the Meta Pixel captured from Plaintiff.

Regardless, the types of data that Plaintiff has alleged may be captured by the Online Technologies are not "contents" under ECPA or WESCA. The Third Circuit has contrasted non-content data like routing, addressing, or signal information with the message in an email, emphasizing "the important difference

between extrinsic information used to route a communication and the communicated content itself." *In re Google*, 806 F.3d at 135.

Here, Plaintiff fails to allege what specific information, if any, she entered that was allegedly captured by the Online Technologies. But based on the general description of the capabilities of the Online Technologies in the Complaint (Compl. ¶¶ 31-79), the only information that *could have* been captured is page views, button clicks, URLs, and other record information—not contents of any communication:

- **Clicks**: Clicks are not contents—they are analogous to routing, addressing, or signal data. Numerous other courts have concluded that mouse movements or clicks do not constitute "contents," because "[n]one of these pieces of data constitutes message content in the same way that the words of a text message or an email do." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082-83 (C.D. Cal. 2021); *see also Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) ("[T]his mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information.").

- **URLs:** URLs are also not contents. URLs are "addressing information" and "do not necessarily reveal any more about the underlying contents of communications than do phone numbers." *In re Nickelodeon*, MDL No. 2443 (SRC), 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) ("[T]he 'file path' for a specific . . . file contained in a folder on a web server owned or operated by [Cigna]" has "less in common with 'the spoken words of a telephone call,' than [it] do[es] with the telephone number dialed to initiate the call.") (citation omitted). While some courts have suggested that highly detailed URLs may constitute content when they reproduce search queries, *e.g.*, *In re Google*, 806 F.3d at 138, Plaintiff does not explicitly allege that search queries were captured, and to the extent that she now somehow claims that they were, she never alleges what information **she** searched on MDLIVE's website. (Compl. ¶ 8.) The Complaint alludes to URLs as examples of what type of information *may have* been recorded by the Online Technologies—but it never once connects those general allegations to any specific action *Plaintiff* purportedly took on the website.

Thus, because Plaintiff never alleges to have entered the "contents" of any written electronic communications on a webpage where Online Technologies are allegedly used, her WESCA claim fails and must be dismissed.

## V.    CONCLUSION

For the forgoing reasons, Cigna respectfully requests that the Court enter an order dismissing Plaintiff's Complaint in its entirety.

Dated:  August 11, 2025

By: */s/ Katherine E. Driscoll*
Katherine E. Driscoll (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
KDriscoll@mofo.com

Joe Nguyen (93638)
Bridget C. Giroud (321289)
STRADLEY RONON STEVENS & YOUNG LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Facsimile: (215) 564-8120
JNguyen@stradley.com
BGiroud@stradley.com

*Counsel for Defendants*
*Evernorth Health, Inc. and MDLIVE, Inc.*

## CERTIFICATE OF SERVICE

I, Katherine E. Driscoll, hereby certify that on August 11, 2025, the foregoing document was filed electronically with the Clerk of the Court using the ECF system.  This document is available for reviewing and downloading from the ECF system.

/s/ Katherine E. Driscoll
Katherine E. Driscoll