**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERIN YATES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EVERNORTH HEALTH, INC. and MD LIVE, INC.,<br><br>Defendants. | Civil Action No. 2:25-cv-02773-PI |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION .......... 1
STANDARD OF REVIEW .......... 4
ARGUMENT .......... 5
I. PLAINTIFF HAS ARTICLE III STANDING .......... 5
II. PLAINTIFF SATISFIES FEDERAL PLEADING STANDARDS .......... 11
III. PLAINTIFF STATES A CLAIM UNDER THE ECPA .......... 13
A. Defendants Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose .......... 13
B. Defendants Intentionally Used The Tracking Technologies To Intercept Plaintiff's Communications 16
IV. PLAINTIFF SUFFICIENTLY ALLEGES HER WIRETAPPING CLAIMS .......... 18
A. Defendants' Consent Argument Ignores HIPAA's Authorization Requirements For Protected Health Information .......... 18
B. The Statute of Limitations Did Not Begin To Toll Until Plaintiff Discovered Defendants' Breach Of Their Patients' Privacy .......... 21
C. Defendants Intercepted And Disclosed The "Contents" Of Plaintiff's Communications Related To Her Sensitive And Confidential Medical Appointments .......... 23
CONCLUSION .......... 26

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A.D. v. Aspen Dental Mgmt.*, Inc.,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) .......... 24

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) .......... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 5

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Braun v. Philadelphia Inquirer, LLC*,
2023 WL 7544160 (E.D. Pa. Nov. 13, 2023) .......... 24

*Circuito Cerrado, Inc. v. Katuran*,
2011 WL 3925245 (E.D. Pa. Sept. 6, 2011) .......... 13

*Commodity Futures Trading Comm'n v. Schor*,
478 U.S. 833 (1986) .......... 7

*Cooper v. Mount Sinai Health Systems, Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. July 30, 2024) .......... 4

*CS Wang & Assoc. v. Wells Fargo Bank, N.A.*,
305 F. Supp. 3d 864 (N.D. Ill. 2018) .......... 9

*Den ex dem. Murray v. Hoboken Land & Imp. Co.*,
59 U.S. 272 (1855) .......... 6

*DiNaples v. MRS Bro, LLC*,
934 F.3d 275 (3d Cir. 2019) .......... 8

*Doe v. Call-on-Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 9

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 24

*Doe v. Tenet Healthcare Corp.*,
2025 WL 1635956 (E.D. Cal. June 9, 2025) .......... 8

*Emmett v. Delta Air Lines, Inc.*,
2024 WL 2816502 (W.D. Pa. June 3, 2024) .......... 25

*Fine v. Checcio*,
582 Pa. 253, 870 A.2d 850 (2005) .......... 22

*Forman v. Davis*,
371 U.S. 178 (1962) .......... 25

*Frasco v. Flo Health, Inc.*,
2025 WL 1433825 (N.D. Cal. May 19, 2025) .......... 9

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 (3d Cir. 2003) .......... 24

*Gaige v. Exer Holding Company, LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... 3

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. Aug. 28, 2023) .......... 19

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .......... 9

*Howard v. Lab'y Corp. of Am.*,
2024 WL 4250677 (M.D.N.C. Aug. 8, 2024) .......... 3

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 16

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3d Cir. 2015) .......... 23, 24

*In re Google, Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 10

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023).................................................... 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. Dec. 22, 2022)....................................... 2, 15, 21

*In re Nickelodeon Cons. Priv. Litig.*,
827 F.3d 262 (3rd Cir. 2017) ............................................................................ 8, 16

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 132 (D. Conn. 2014) .................................................................. 17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)............................................................................ 24

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ............................................................... 24

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)............................................................ 4

*Kamal v. J. Crew Group, Inc.*,
918 F.3d 102 (3rd Cir. 2019) .............................................................................. 7

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)..................................................... 15

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) ....................................................... 16

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ................................................. 14, 15

*Lonegan v. Hasty*,
436 F.Supp.2d 419 (E.D.N.Y. 2006) ........................................................... 17, 18

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025) .......................................................... 3

*M.R. v. Salem Health Hosps. & Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024)............................................................ 4

*Massie v. General Motors LLC*,
2022 WL 534468 (D. Del. 2023) .......... 10

*McMullan v. Wohlgemuth*,
453 Pa. 147 (1973) .......... 8

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 15

*Murphy v. Thomas Jefferson Univ. Hospitals, Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) .......... 3, 11, 12, 14

*Oliver v. Noom, Inc.*,
2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) .......... 24

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 16

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. 2024) .......... 8

*PG Pub. Co. v. County of Washington*,
162 Pa. Cmwlth. 196 (1994) .......... 7

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Wash. 2019) .......... 7, 20

*Popa v. Harriet Carter Gifts, Inc.*,
772 F. Supp. 3d 592 (W.D. Pa. 2025) .......... 20

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 18

*R.S. v. Prime Healthcare Services, Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 18

*Schnur v. JetBlue Airways Corp.*,
2024 WL 2816552 (W.D. Pa. June 3, 2024) .......... 24

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) .......... 5

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 6

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) .......... 5, 6

*Stern v. Marshall*,
564 U.S. 462 (2011) .......... 7

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 14

*TransUnion LLC v. Ramirez*,
141 S.Ct. 2190 (2021) .......... 6, 7

*Vermont Agency of Natural Resources v. U.S. ex. rel. Stevens*,
529 U.S. 765 (2000) .......... 6

*Vonbergen v. Liberty Mut. Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) .......... 23, 24

*Walsh v. Krantz*,
386 F. App'x 334 (3d Cir. 2010) .......... 24

**STATUTES**

18 Pa. Cons. Stat. § 5701 .......... 2

18 Pa. Cons. Stat. § 5702 .......... 24

18 U.S.C. § 2510 .......... 24

18 U.S.C. § 2511(1) .......... 1

18 U.S.C. § 2511(1)(a) .......... 16, 17

18 U.S.C. § 2511(2)(d) .......... 14

18 U.S.C. § 2520 (2005) .......... 17, 22

Cal. Penal Code § 630 .......... 24

## RULES

Fed. R. Civ. P. 8(a)(2) .......... 4

Fed. R. Civ. P. 8(d)(2) .......... 13

Fed. R. Civ. P. 12(b)(1) .......... 5

Fed. R. Civ. P. 12(b)(6) .......... 5

## REGULATIONS

31 Pa. Code § 146b .......... 2

31 Pa. Code § 146b.11-13 .......... 19, 20

31 Pa. Code § 146b.13 .......... 19

45 C.F.R. § 164.504 .......... 3

45 C.F.R. § 164.506 .......... 19

45 C.F.R. § 164.508 .......... 19

# INTRODUCTION

Defendants Evernorth Health, Inc. and MD Live, Inc., (together, "Defendants" or "MD Live") provide telehealth therapy and medical appointments through their website, www.mdlive.com, which can be accessed through Cigna's patient portal (the "Website"). *See* Plaintiff's Class Action Complaint at ¶ 1 (ECF No. 1) ("Compl."). Defendants hold themselves out as a trusted partner to those seeking and navigating medical and mental health treatment. Moreover, Defendants represent to their patients that their sensitive and protected treatment information will be kept both confidential and private. *Id.* Figures 1 ("confidential and no cost" medical services) and 2 ("Talk therapy and coping strategies from the comfort and privacy of your own home."). But behind this seemingly compassionate digital front lies a troubling betrayal: while promoting a façade of care and confidentiality, Defendants secretly disclose sensitive and protected health information ("PHI")—including the interactions patients take within their private patient portal and the specific medical and therapy treatments they are seeking (therapy, dermatology, etc.)—to Facebook and Google, two of the world's largest social media and advertising companies. And Defendants do so without their patients' knowledge or consent. *Id.* ¶ 6. Defendants' conduct therefore violates the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), *et seq*. and the Pennsylvania Wiretapping Act ("WESCA"), 18 Pa. Cons. Stat. § 5701, *et seq*.

This is not a disclosure made for medical treatment or care. It is a calculated exploitation of patient data for commercial gain, fueling targeted advertising and enriching Defendants, Facebook, and Google in the process, at the expense of Defendants' patients. The intrusion is accomplished via complex computer code embedded on the Website known as tracking pixels. Defendants intentionally embedded Facebook and Google's tracking pixels on their Website, which intercept PHI as their patients engage with the Website to book their therapy and medical appointments. Plaintiff, like countless others, used the Website to seek medical treatment while maintaining a Facebook and Google account. She had no reason to suspect that doing so would expose her private medical information to unknown third parties.

As healthcare providers, Defendants are subject to strict duties under federal and state law, including the Health Insurance Portability and Accountability Act ("HIPAA") and Pennsylvania's Privacy of Consumer Health Information, 31 Pa. Code § 146b, which define and protect individually identifiable health information ("IIHI"). This includes any data created or received by a healthcare provider that relates to a person's physical or mental health (including patient status) and identifies (or could reasonably be used to identify) that person. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 791 (N.D. Cal. Dec. 22, 2022) ("I agree that the information at issue here appears to show patient status and thus constitutes

protected health information under HIPAA."). This also includes disclosures made by Defendants' service providers and business associates. 45 CFR § 164.504. Moreover, Defendants' conduct flies in the face of its own representations as to patient privacy.

Courts across the country routinely recognize that disclosing protected health information without consent or authorization is unlawful. *See Murphy v. Thomas Jefferson Univ. Hospitals, Inc.*, 2024 WL 4350328 at *4-5 (E.D. Pa. Sept. 30, 2024) (finding "intention to violate HIPAA sufficient to invoke the crime-tort exception to the ECPA."); *Lugo v. Inova Health Care Servs.*, 2025 WL 905191, at *6 (E.D. Va. Mar. 25, 2025) (holding "Plaintiff has properly alleged that INOVA violated HIPAA by using pixels on its website and Patient Portal" where plaintiff alleged defendant disclosed, via Google's tracking pixel on its website, "(1) status as medical patients; (2) communications with Inova Health through its websites and Patient Portal; and (3) information about their medical appointments" among other data); *see also Howard v. Lab'y Corp. of Am.*, 2024 WL 4250677, at *11 (M.D.N.C. Aug. 8, 2024), *report and recommendation adopted,* 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) (denying motion to dismiss WESCA claim based on similar wiretapping allegations); *Gaige v. Exer Holding Company, LLC*, 2025 WL 559719, at *5 (C.D. Cal. Mar. 2, 2025) (denying motion to dismiss ECPA claims where the plaintiff alleged that the defendant health care provider unlawfully disclosed PHI to

Facebook without his knowledge or consent); *K.L. v. Legacy Health*, 2024 WL 4794657, at *6 (D. Or. Nov. 14, 2024) ("The Court agrees with the line of cases finding that violating HIPAA can constitute an independent criminal act for purposes of the carve-out to ECPA's party exception."); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024) (same); *Cooper v. Mount Sinai Health Systems, Inc.,* 742 F. Supp. 3d 369, 381 (S.D.N.Y. July 30, 2024) (same). The same outcome is warranted here.

This case is not about ordinary commercial data collection or the collection of generalized web analytics. It is about a medical provider betraying patient trust by allowing advertising platforms to surreptitiously collect and exploit health-related information disclosed in the course of seeking medical care. For the reasons detailed herein, Defendants' Motion should be denied.

## **STANDARD OF REVIEW**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure tests a district court's subject matter jurisdiction. When a party attacks the subject matter jurisdiction of the court under Rule 12(b)(1), the court generally must first determine that it has jurisdiction as a threshold matter. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING

Defendants argue that Plaintiff lacks Article III standing to bring her claims because she has "made no connection between the Online Technologies to her protected health information." *See* Motion to Dismiss at 10 (ECF No. 10) ("MTD

or Motion"). Not only does that argument contradict binding precedent from the Supreme Court and Third Circuit, but it also ignores Plaintiff's allegations.

"Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Vermont Agency of Natural Resources v. U.S. ex. rel. Stevens*, 529 U.S. 765, 774 (2000) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998)). To satisfy Article III, "plaintiffs must demonstrate, among other things, that they have suffered a concrete injury." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2200 (2021).

To be concrete, an injury "must actually exist"; that is, it must be "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (internal quotations omitted). "The most obvious are traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC*, 141 S.Ct. at 2204. Although less obvious, "[v]arious intangible harms can also be concrete." *Id*. An intangible harm is concrete when it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341.

For more than a century, the Supreme Court has acknowledged that "a suit at the common law" is within "judicial cognizance." *Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 284 (1855). Put differently, "[i]njury to rights

recognized at common law – property, contract, and torts – are sufficient for standing purposes." *See* Erwin Chemerinsky, *Federal Jurisdiction* 74 (8th ed. 2020); *see also Stern v. Marshall*, 564 U.S. 462, 484 (2011) ("When a suit is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789, and is brought within the bounds of federal jurisdiction, the responsibility of deciding that suit rests with Article III judges in Article III courts."). That unquestionably includes claims for "intrusion upon seclusion." *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *see also Kamal v. J. Crew Group, Inc.*, 918 F.3d 102, 114 (3rd Cir. 2019) ("Harms actionable under traditional privacy torts include unreasonable intrusion upon seclusion, appropriation of the other's name or likeness, unreasonable publicity given to the other's private life, and publicity that unreasonably places the other in a false light before the public.") (internal quotations and ellipses omitted). Unlike statutory claims, common-law claims—particularly those with deep roots in our legal traditions—are *de facto* "the types of matters subject to resolution by Article III courts." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 854 (1986).

For intrusion upon seclusion, conduct is "highly offensive or objectionable" when it causes "outrage." *See PG Pub. Co. v. County of Washington*, 162 Pa. Cmwlth. 196, 213 (1994); *see also Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122 (W.D. Wash. 2019) (same). As the Third Circuit has explained, that

standard is met where companies use "privacy-related terms" to "encourage" individuals to "browse th[eir] websites under false pretenses." *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 295 (3rd Cir. 2017). And where federal and state law protects certain information from disclosure, courts must "give great deference to this sound legislative judgment." *McMullan v. Wohlgemuth*, 453 Pa. 147, 165 (1973).

The Third Circuit has further held that plaintiffs have standing to bring statutory claims by alleging "the unlawful disclosure of legally protected information." *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016). It is therefore unsurprising that with near unanimity, courts agree that Article III is satisfied by alleging "the unlawful disclosure of confidential information." *See, e.g.*, *DiNaples v. MRS Bro, LLC*, 934 F.3d 275, 281 (3d Cir. 2019); *Doe v. Tenet Healthcare Corp.*, --- F. Supp. 3d ----, 2025 WL 1635956, at *11 (E.D. Cal. June 9, 2025) ("Each Plaintiff has adequately alleged standing by demonstrating an injury in fact, caused by Defendants' conduct, and redressable by this court. Namely, Plaintiffs … submitted personal information, and Defendants invaded their privacy rights by disclosing their information to third parties without consent through the use of tracking technology embedded on Defendants' Web Properties. At the pleading stage, Plaintiffs allegations are sufficient to establish standing.") (internal citations omitted); *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 271

(W.D. Pa. 2024) ("The common-law right of privacy and WESCA give Petris the right to control the flow of information concerning his person, which includes his firearm purchase. As alleged, Sportsman's Warehouse surreptitiously disclosed Petris's personal information related to his firearm purchase, which is not information 'open to public inspection,' to third parties without his consent."); *CS Wang & Assoc. v. Wells Fargo Bank, N.A.*, 305 F. Supp. 3d 864, 880 (N.D. Ill. 2018) ("[T]he court concludes that Plaintiffs have suffered a sufficiently concrete injury by alleging a violation of their right to privacy. Invasion of privacy is actionable at common law, … and the type of injury alleged here arises from the exact same type of violation that CIPA prohibits: recording telephone communications without consent."); *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *4 (C.D. Cal. Dec. 16, 2024) ("Plaintiff has plausibly stated an injury-in-fact to satisfy Article III standing. Plaintiff alleges that Defendant aided Facebook in 'intercepting' his 'sensitive and confidential' information shared with the LensCrafters website to schedule eye exams and obtain new eyewear prescriptions, and that these acts breached his right to privacy.").[1]

[1] *See also Doe v. Call-on-Doc, Inc.*, 2025 WL 1677632, at *4 (S.D. Cal. June 13, 2025) ("Plaintiff claims her right to privacy was violated when her PII and PHI were intercepted by third parties on Defendant's website, an injury that is concrete and particularized."); *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *8 (S.D. Cal. Aug. 19, 2024) ("Because each named plaintiff has alleged the interception of personal or sensitive information, including his or her name, date of birth, gender, email address, and health information ... the class plaintiffs have alleged facts sufficient to establish standing at this stage."); *Frasco v. Flo Health, Inc.*, 2025 WL 1433825, at *12 (N.D. Cal. May 19, 2025) ("Put in terms of standing, the loss of control over one's personal information is the 'concrete' harm, whether from

Plaintiff has standing to bring her wiretapping claims under the ECPA and WESCA because her injury bears a close relationship to intrusions upon seclusion. Specifically, Plaintiff establishes a concrete injury by alleging:

> [O]n or around November 22, 2023, Plaintiff logged into her Cigna patient portal and clicked on a link for telehealth services offered through MD Live. ***Plaintiff was then taken to the scheduling portal on the Website, where she searched for treatment options and scheduled her medical appointment***. Unbeknownst to Plaintiff, Defendants assisted the Third Parties in tracking her private activity on the Website using the Meta Pixel (the "Facebook Pixel"), Google's DoubleClick, and Google Analytics (collectively, the "Tracking Technologies"). Defendants installed this software on the Website to assist the Third Parties in tracking Plaintiff and intercepting her communications with Defendants, ***including communications that contained confidential, health-related information concerning her medical appointment***.

Compl. ¶ 8 (emphasis added). At no point did Defendants "receive[] consent from Plaintiff to track or share her confidential and protected health data to advertisers." *Id*. Taken together, under any standard, those allegations are enough to show concrete injury. *See, e.g., In re: Google, Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."); *Massie v. General Motors LLC*, 2022 WL 534468, at *5 (D. Del. 2023) (same). Additionally, such allegations conform to recognized pleading standards within this

---

stealing access to a personal diary in 1916 or obtaining user information in a healthcare app in 2016. In each case, a person has lost control over her private information because of another's intentional actions.").

District. *Murphy*, 2024 WL 4350328, at *4 (finding allegations that "Defendant transmitted Plaintiffs' communications relating to appointments with medical providers, relating to specific healthcare providers, conditions, treatments, diagnoses, prognoses, prescription drugs, symptoms, insurance, and payment information, as well as messages exchanged in patient portals" was sufficient to state a claim under the ECPA).[2] Plaintiff's allegations here go beyond the "generalized allegations" in *Smart* and *Santaro*. *See*, *e.g.*, *Smart v. Main Line Health*, ("Plaintiff fails to state what specific HIPAA-protected information Plaintiff *himself* provided to Defendant via his browsing activity that was subsequently disclosed to Meta.").

Defendants remaining arguments fare no better, as Defendants have failed to cite *any* authority finding that a disclosure under HIPAA requires publicity or allegations of additional harm related to the disclosure in order to satisfy standing requirements. That is because no such requirement exists.

## II. PLAINTIFF SATISFIES FEDERAL PLEADING STANDARDS

Defendants argue that Plaintiff fails to satisfy federal pleading standards because "Plaintiff does not allege the date on which she registered for a myCigna account, whether she also registered on MDLIVE's website, the personal or protected health information (if any) she purportedly input into MDLIVE's website,

[2] The pleading standard advocated for by Defendants would defy common sense, as it would essentially require Plaintiff to disclose her protected her information in order to seek redress for Defendants' conduct of unlawfully disclosing it.

or which Online Technologies (if any) allegedly captured her information." MTD at 14. But that is wrong because, as discussed above, such contentions are contradicted by Plaintiff's detailed allegations:

> ***Plaintiff used Defendants' telehealth platform to schedule several medical appointments between August 28, 2022 and November 22, 2023***, while in Pennsylvania. For example, on or around November 22, 2023, ***Plaintiff logged into her Cigna patient portal and clicked on a link for telehealth services offered through MD Live. Plaintiff was then taken to the scheduling portal on the Website, where she searched for treatment options and scheduled her medical appointment***. Unbeknownst to Plaintiff, Defendants assisted the Third Parties in tracking her private activity on the Website using the ***Meta Pixel (the "Facebook Pixel"), Google's DoubleClick, and Google Analytics (collectively, the "Tracking Technologies"). Defendants installed this software on the Website*** to assist the Third Parties in tracking Plaintiff and intercepting her communications with Defendants, ***including communications that contained confidential, health-related information concerning her medical appointment***.

Compl. ¶ 8 (emphasis added). Other courts have found such allegations sufficient to state a claim under the ECPA. *Murphy*, 2024 WL 4350328, at *4.

Next, Defendants argue that Plaintiff's allegations are inconsistent as to which parties are allegedly intercepting Plaintiff's information. This mischaracterizes Plaintiff's allegations. Plaintiff alleges that "Defendants maintain and operate the Website," "incorporate[ed] the Third Party Tracking Technologies to the Website," and "are well aware of the dangers of incorporating such technology on the Website, but continue to do so due to the value of the data that is intercepted." Compl. ¶ 12. Additionally, Plaintiff clearly states it is Defendants who intercept the protected health information through the use of the Third Party Tracking Technologies. *See*,

*e.g.*, *id.* ¶ 35 ("Once Defendants intercept the Website communications through the Doubleclick API…Google has the capability to use such information for its own purposes."); ¶ 83 ("Defendants intercept its patients' confidential information from its telehealth Website[.]"); ¶ 84 ("[T]he Meta Pixel was embedded on the Website, which allowed Defendants to intercept and record 'click' events[.]"); ¶ 88 ("From the point that a patient enters the Defendants' Website, nearly every interaction and communication is intercepted by Defendants through the Tracking Technologies and further disclosed by Defendants to the Third Parties."). Such allegations are more than sufficient to put Defendants on notice as to the claims against them. Regardless, Plaintiff is entitled to plead her claims in the alternative. Fed. R. Civ. P. 8(d)(2); *see also Circuito Cerrado, Inc. v. Katuran*, 2011 WL 3925245, at *2 (E.D. Pa. Sept. 6, 2011) ("The Court finds Plaintiff has adequately put Defendants on notice that it is pursuing a claim for the illegal interception and publication of the Program for commercial advantage, and Plaintiff is entitled to discovery to determine precisely how the signal was intercepted and which statute is applicable.").

## III. PLAINTIFF STATES A CLAIM UNDER THE ECPA

### A. Defendants Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose

Defendants argue that because the ECPA is a one-party consent statute and "MDLIVE was necessarily a party to each communication . . . Plaintiff's ECPA claims must be dismissed." MTD at 16. However, as Defendants concede, the party

exception does not apply if the interception was for the purpose of a tortious or criminal act. 18 U.S.C. § 2511(2)(d). In other words, if Defendants intercepted Plaintiff's communications "for the purpose of committing any tortious or criminal act," they may be liable under the ECPA. The crime-tort exception focuses on whether "the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (internal quotations and citations omitted).

As a threshold matter, Defendants' contention that Plaintiff "cannot plead any . . . tortious or criminal act" such that the crime-tort exception does not apply is without merit. Here, Defendants' conduct falls squarely within the crime-tort exception because they intended to violate various tort and criminal laws through the interception of Plaintiff's communications, including HIPAA's criminal prohibitions against disclosing "individually identifiable health information" without authorization, and the Pennsylvania equivalent. Compl. ¶¶ 5, 23-30, 89, 99-121. Numerous federal courts have found substantially similar allegations sufficient to trigger the crime-tort exception. *See*, *e.g.*, *Murphy*, 2024 WL 4350328, at * 4 (finding the "intention to violate HIPAA sufficient to invoke the crime-tort exception to the ECPA."); *Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception . . . [and that the complaint]

plausibly state[d] a claim for relief under the Wiretap Act"); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927-28 (D. Minn. 2024) (allegations that defendant violated HIPAA's disclosure rule was sufficient to invoke the crime-tort exception); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("*Meta Pixel I*") ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquiries" in "violation of various state tort claims and state and federal laws").

Defendants' reliance on *Kurowski, et al. v. Rush Sys. for Health* is misguided, as the court abrogated this decision and upheld the plaintiffs' ECPA claim nine months later in *Kurowski III*, after the plaintiffs refined their allegations pertaining to HIPAA. 2023 WL 8544084, at *3-4. The remaining authority relied upon by Defendants is distinguishable, as <u>*none*</u> of those cases contained allegations related to the disclosure of a patient's medical appointment, such that HIPAA and state law

provisions invoked the crime-tort exception. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274-75 (3d Cir. 2016) (not health related and as a crime-tort exception inapplicable); *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299, at *2–5 (N.D. Cal. Apr. 3, 2024) (same); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112 (S.D. Cal. 2023) (crime-tort exception inapplicable because "no legal authority providing that the exception is triggered"); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011) (same).

### B. Defendants Intentionally Used The Tracking Technologies To Intercept Plaintiff's Communications

Defendants argue that Plaintiff's ECPA claim should be dismissed because the "ECPA does not recognize a private civil cause of action for aiding and abetting." MTD at 17. But Plaintiff's ECPA claim is not premised on aiding and abetting liability. Instead, Plaintiff alleges that Defendants, "by utilizing and embedding the tracking technology provided by [Meta and Google] on its Website, . . . intentionally intercepted, endeavored to intercept, and/or procured another person to intercept the electronic communications of Plaintiff and Class members in violation of 18 U.S.C. §2511(1)(a)." Compl. ¶ 110. And "Plaintiff and Class members did not authorize Defendants to acquire the content of their communications for purposes of invading Plaintiff's and Class members' privacy. Plaintiff and Class members had a reasonable expectation that Defendants would not redirect their communications to

Third Parties without their knowledge or consent." Compl. ¶ 119. Therefore, there is no aiding and abetting. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 148 n. 2 (D. Conn. 2014) ("The statute prohibits an entity from intercepting, endeavoring to intercept or procuring another to intercept. We do not intend our definition of aider and abettor to cover a "procurer" as used in the statute"); *Lonegan v. Hasty*, 436 F.Supp.2d 419, 427-28 (E.D.N.Y. 2006) (A procurer is not an aider and abettor but one who violates the statute directly.").

Of note, the *Lonegan* court similarly rejected Defendants' narrow interpretation of the ECPA:

> To me, the more natural reading of the amended statute shows no intent on the part of Congress to eliminate the private right of action for procurement violations. In relevant part, the amended statute provides that "any person whose wire, oral, or electronic communication is intercepted ... in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation ..." 18 U.S.C. § 2520 (2005). Pursuant to Section 2511(1)(a), the class of persons whose communications are intercepted in violation of the Wiretap Act includes those persons whose communications are intercepted by someone who was procured to do so by a third party. In such case, both the person who actually intercepted the communications and the person who procured the interception have violated the Act, and the victim is authorized to sue any person or entity who engaged in that violation.

436 F. Supp. 2d at 428. And courts consistently find similar allegations sufficient to state a claim for violation of the ECPA. *See id*. ("As an alternative to their procurement theory of liability, plaintiffs assert that [the defendant] intercepted their communications directly . . . even if the procurement theory fails, the direct

interception theory is sufficient to support the claims"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024); *R.S. v. Prime Healthcare Services, Inc.,* 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025).

Plaintiff has therefore pled a viable ECPA claim against Defendants under both the procurement and direct interception theories of liability.

## IV. PLAINTIFF SUFFICIENTLY ALLEGES HER WIRETAPPING CLAIMS

### A. Defendants' Consent Argument Ignores HIPAA's Authorization Requirements For Protected Health Information

Defendants claim "Plaintiff's ECPA and WESCA claims also fail because Plaintiff . . . consented to the use of the Online Technologies" and that "[h]er consent is dispositive." MTD at 18-19. That is wrong.

*First*, HIPAA distinguishes between "consent" and "authorization." As regulated entities under HIPAA, Defendants must adhere to the authorization requirements when PHI and PII are being disclosed to third parties (including, as is the case here, Google and Meta). Compl. ¶¶ 16-23. While consent may allow certain uses or disclosures of PHI for treatment, payment, or healthcare operations, it is not sufficient for uses or disclosures that require an authorization under 45 C.F.R. § 164.508, which encompasses most uses, including marketing. *Compare* 45 C.F.R. § 164.506 (consent) *with* 45 C.F.R. § 164.508 (authorizations).

Likewise, Pennsylvania law requires an authorization to "disclose nonpublic personal health information under § 146b.11(a) (relating to authorization required for disclosure of nonpublic personal health information)." 31 Pa. Code § 146b.13. Here, Defendants' attempt to categorize consent to a website policy (i.e. an internet contract) as a HIPAA (and Pennsylvania law) compliant authorization is without merit, as they do not meet the more stringent requirements for authorizations under state and federal law. *Compare* MTD at 19-21 *with* 45 C.F.R. § 164.508 *and* 31 Pa. Code § 146b.11-13. Defendants are aware of these distinctions, as they explicitly notify their patients that "uses and disclosures for marketing purposes and disclosures that constitute a sale of PHI require an authorization." Declaration of Mark C. Atlee ("Atlee Decl."), Ex. A. Moreover, Defendants' privacy policies and other related disclosures contain several contradictory statements that fail to notify patients of their privacy practices. *Id.*; *see also id.* at 1 ("We take our obligation to keep your PHI secure and confidential very seriously."); Atlee Decl., Ex. B. (noting that the cookies used by Defendants "do not store directly personal information").[3]

[3] Defendants' representation is false, as the Facebook ID disclosed to Facebook does constitute "personal information." *See Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. Aug. 28, 2023) ("This Court agrees that a FID can constitute PII where it leads to a Facebook page that discloses personal and identifying information about the consumer.").

*Second*, it is a well-established legal principle that consent is rarely a defense to criminal conduct, and here, Defendants' conduct falls squarely within what the U.S. Department of Health and Human Services has warned is unlawful:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. ***For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures***.

Compl. ¶ 24 (citations omitted); *see also* Compl. ¶¶ 24-30 (FTC and HHS Pronouncements).[4]

*Third*, while Defendants cite to the Western District's decision reviewing the summary judgment order in *Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592 (W.D. Pa. 2025), Defendants fail to mention the motion to dismiss ruling in that case, which found that the issue of consent under WESCA presented a question of fact. *See Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 118-19 (W.D. Pa. 2019). Moreover, the ruling Defendants cite is irrelevant to Plaintiff's claims here, as *Popa* did not concern the unlawful disclosure of protected health information. *Id.* at 112 ("According to [plaintiff], Navistone intercepted her…name, her residential address, and her email address—as she browsed HCG's website for pet products.").

[4] Pennsylvania has similar requirements under 31 Pa. Code §§ 146b.11–13.

*Fourth*, assuming, *arguendo*, that the privacy policies are binding (they are not), Defendants misrepresent their data sharing as complying with their legal obligations at covered entities under HIPAA. MTD Ex. F at 4 ("How We Use Personal Information . . . . Compliance and Legal Process. To comply with the law and our legal obligations, to respond to legal process and related to legal proceedings;"); MTD Ex. H at 7 ("With respect to any PHI in our possession, you have certain rights under HIPAA as described in the Notice of Privacy Practices provided to you by your healthcare Provider."). Thus, Plaintiff and members of the putative class would have no reason to know their personal medical information was being shared unlawfully when they purportedly agreed to the website terms and privacy policy. *See In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 791 (N.D. Cal. Dec. 22, 2022) (finding that "a reasonable user would not have understood that Meta may intercept their health information.").

### B. The Statute of Limitations Did Not Begin To Toll Until Plaintiff Discovered Defendants' Breach Of Their Patients' Privacy

Defendants incorrectly posit that Plaintiff's claims should be dismissed because "she failed to file the Complaint in advance of ECPA or WESCA's two-year statute of limitations." MTD at 21. Defendants' argument fails for two independent reasons.

*First*, the statute of limitations for both the ECPA and WESCA do not toll until the claimant has reasonable opportunity to discover the violations pursuant to the discovery rule. *See* 18 U.S.C. § 2520; *see also Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850 (2005) (acknowledging Pennsylvania also uses the discovery rule). Patients—including Plaintiff—reasonably expect that their health information, which is protected under both state and federal law, would not be disclosed in violation of these laws and in violation of Defendants' own representations. *Compare* Compl. ¶¶ 4-6 *and supra* Sec. IV(A) *with* MTD at 22. It is therefore reasonable that Plaintiff and members of the putative class were unaware of Defendants' surreptitious disclosure of their PII and PHI. Compl. ¶¶ 6, 8, 82, 119. Moreover, Defendants' Privacy Policies purport to adhere to the law, such that Plaintiff and Class Members would have no reason to suspect their personally identifiable information and protected health information were being intercepted by third parties unlawfully. MTD Ex. F at 4 ("How We Use Personal Information . . . . Compliance and Legal Process. To comply with the law and our legal obligations, to respond to legal process and related to legal proceedings;"); MTD Ex. H at 7 ("With respect to any PHI in our possession, you have certain rights under HIPAA as described in the Notice of Privacy Practices provided to you by your healthcare Provider.").

*Second*, even if the statutes of limitations for Plaintiff's 2022 appointments have tolled (they have not), Plaintiff used Defendants' platform to book a medical appointment "on or around November 22, 2023[,]" such that she has a viable claim falling squarely within the two-year statutory period. Compl. ¶ 8.

### C. Defendants Intercepted And Disclosed The "Contents" Of Plaintiff's Communications Related To Her Sensitive And Confidential Medical Appointments

Defendants argue that "Plaintiff's claims under ECPA and WESCA must be dismissed because she does not allege that [Defendants] intercepted 'the contents' of her communications." MTD at 23. As a preliminary matter, courts within this District have found this argument to be premature at the pleading stage. *Vonbergen v. Liberty Mut. Ins. Co*., 705 F. Supp. 3d 440, 457 (E.D. Pa. 2023) (Pratter, J.) ("The Court [would] be better equipped to [evaluate the issue of 'content'] after a record is developed." ) Notwithstanding, this argument has been consistently rejected.

Relying on *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 135 (3d Cir. 2015), Defendants suggest "page views, button clicks, URLs, and other record information [are] not contents of any communication." MTD at 24. However, in that same case, the Third Circuit explained "URLs may be . . . [record] information, but only when they are performing such a function. If [a] . . . URL is instead part of the substantive information conveyed to the recipient, then by definition it is 'content.'" *In re Google*, 806 F.3d at 137; *see also Doe v. Meta*

*Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (same); *In re Zynga Priv. Litig.,* 750 F.3d 1098, 1108–09 (9th Cir. 2014) (same); *Braun v. Philadelphia Inquirer, LLC*, 2023 WL 7544160, at *5 (E.D. Pa. Nov. 13, 2023) ("[defendant's] argument to the effect that URLs are not substantive content of a communication . . . fails to persuade[.]") (*citing In re Google*, 806 F.3d 125); *A.D. v. Aspen Dental Mgmt.*, Inc., 2024 WL 4119153, at *5 (N.D. Ill. Sept. 9, 2024); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023), *motion to certify appeal denied,* 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (collecting cases).[5]

Courts have also extended this view beyond just URLs to a broader range of internet user interactions, including button clicks. *See Vonbergen*, 705 F. Supp. 3d at 456-57 (holding the plaintiff's browsing activities constituted content because the defendant intercepted search results, mouse clicks and movements, pages, content views, etc.); *Oliver v. Noom, Inc.*, 2023 WL 8600576, at *7 (W.D. Pa. Aug. 22, 2023); *Schnur v. JetBlue Airways Corp.*, 2024 WL 2816552, at *8 (W.D. Pa. June 3, 2024) (Defendant's argument "that mouse clicks and movements, keystrokes, search terms, information inputted by [p]laintiff, and pages and content viewed by

[5] Of note, these cases concern the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, WESCA, and/or other state wiretapping statutes (such as the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*). WESCA is analogous thereto. *See, e.g.*, *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 n.6 (3d Cir. 2003), as amended (Jan. 20, 2004) ("the Pennsylvania counterpart to ECPA Title 1, 18 Pa. Cons. Stat. § 5702, *et seq.*[,] … is interpreted in the same way as the ECPA[.]"); *Walsh v. Krantz*, 386 F. App'x 334, 340 (3d Cir. 2010) (same).

[p]laintiff … would not be considered contents … fails[.]") (cleaned up); *Emmett v. Delta Air Lines, Inc.*, 2024 WL 2816502, at *8-9 (W.D. Pa. June 3, 2024) (largely same).

Here, Plaintiff alleges Google and Meta intercept content—namely, individual identifiers disclosing who the patient is, the individual's patient status, and details about the type of medical appointment they are scheduling. Compl. ¶¶ 35-36, 40-41, 44, 50-59, 73, 80-89. The Complaint makes clear the tracking technologies installed by Defendants result in interceptions of confidential personal information—including information relating to medical appointments—which is then being monetized and used by third parties to serve their own purposes. Compl. ¶¶ 80–89, Figures 3-5. Defendants' therefore intercepted and disclosed the contents of Plaintiff's communications.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in full. Alternatively, if the Motion is granted in any respect, Plaintiff should be given leave to amend. *Forman v. Davis*, 371 U.S. 178, 182 (1962).

Dated: September 8, 2025

Respectfully submitted,

By: *__/s/ Mark C. Atlee__*

**ATLEE HALL LLP**
Mark C. Atlee
415 Duke Street
Lancaster, PA 17602
Tel: (717) 393-9596
mcatlee@atleehall.com

**BURSOR & FISHER, P.A.**
Alec M. Leslie (*Pro Hac Vice Forthcoming)*
1330 Avenue of the
Americas, 32nd Fl.
New York, NY 10019
Tel: (646) 837-7150
aleslie@bursor.com

**CERTIFICATE OF SERVICE**

I, Mark C. Atlee, hereby certify that on September 8, 2025, the foregoing document was filed electronically with the Clerk of the Court using the ECF system. This document is available for reviewing and downloading from the ECF system.

*/s/ Mark C. Atlee*
Mark C. Atlee

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERIN YATES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EVERNORTH HEALTH, INC. and MD LIVE, INC.,<br><br>Defendants. | Case No. 2:25-cv-02773-PD |

**DECLARATION OF MARK C. ATLEE IN SUPPORT OF PLANTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

I, Mark C. Atlee, hereby declare as follows:

1. I am an attorney admitted to practice law in the State of Pennsylvania and before this Court. I am a partner at the law firm of Atlee Hall LLP, counsel for Plaintiff Erin Yates. I make this declaration in support of Plaintiff's Opposition to Defendants' Motion to Dismiss.

2. I have personal knowledge of the facts set forth below and if called as a witness, could testify competently thereto.

3. Attached as **Exhibit A** is a true and correct copy of The Cigna Group's Notice of Privacy Practices, last accessed September 8, 2025.

4. Attached as **Exhibit B** is a true and correct copy of the cookie banner

located on the public webpage of the Cigna Healthcare website, last accessed September 8, 2025.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 8, 2025, in Lancaster, Pennsylvania.

*/s/ Mark C. Atlee*___
Mark C. Atlee

**EXHIBIT A**

# Notice of Privacy Practices

**This Notice describes how health information about you may be used and disclosed, and how you can get access to this information. Please review it carefully.**

## Our Privacy Commitment

In the normal course of doing business, we create, obtain and/or maintain records about you and the services we provide to you. The information we collect is called Protected Health Information ("PHI"). We take our obligation to keep your PHI secure and confidential very seriously. We are required by state and federal law to protect the privacy of your PHI and to provide you with this Notice about how we safeguard and use it, and notify you following a breach of your health information. When we use or give out ("disclose") your PHI, we are bound by the terms of this Notice. This Notice applies to all electronic or paper records we create, obtain and/or maintain that contain your PHI.

## Background

This Notice is provided by one or more subsidiaries of The Cigna Group that operate as affiliated covered entities under HIPAA ("we"). The Cigna Group is a health company committed to creating a better future built on the vitality of every individual and every community. Cigna Healthcare provides services to guide our customers through the health care system, empowering them with information and insight they need to make the best choices for improving their vitality. These services include employer-sponsored health plans and solutions, third-party administrator collaboration, or Medicare and individual and family health plans and solutions. Evernorth Health Services creates pharmacy, care and benefits solutions to improve health and increase vitality. We innovate to make the prediction, prevention and treatment of disease more accessible to millions of people.

## This Notice of Privacy Practices ("Notice") Describes:

- How we may use and disclose your PHI
- Your rights to access and amend your PHI

**We are required by law to:**

- Maintain the privacy of your PHI
- Provide you with notice of our legal duties and privacy practices with respect to PHI
- Abide by the terms of the Notice currently in effect for Cigna Affiliated Covered Entities

## How We Protect Your Privacy

We understand the importance of protecting your PHI. We maintain technical, physical and administrative safeguards to ensure the privacy of your PHI.

## Permitted Uses and Disclosures of Your PHI

### How We May Use PHI Without Your Authorization

**Treatment** – We may use and disclose your PHI to health care professionals or other third parties to provide, coordinate and manage the delivery of health care. For example, to help you obtain services and treatment such as ordering lab tests and using results or your pharmacist we may disclose PHI about you to your doctor in order to coordinate the prescribing and delivery of your drugs. We also may provide you with treatment reminders and information about potential side effects, drug interactions and other treatment-related issues involving your medicine.

THE CIGNA GROUP

**Payment** – We may use and disclose PHI about you to receive payment for our services or premiums for your coverage, manage your account, fulfill our responsibilities under your benefit plan and process your claims for drugs you have received. For example, we may give PHI to your health plan (or its designee) so we can confirm your eligibility or coverage, or we may submit claims to your health plan, employer or other third party for payment.

**Health Care Operations** – We may use and disclose your PHI to carry on our own business planning and administrative operations. We need to do this so we can provide you with high-quality services. For example, we may share your claims information with your doctor if you have a medical need that requires attention; we may use and disclose PHI about you to assess the use or effectiveness of certain drugs, develop and monitor medical protocols, and to provide information regarding helpful health-management services.

**Disclosures to Your Employer as Sponsor of Your Health Plan** – Where permitted by law, we may disclose your PHI to your employer or to a company acting on your employer's behalf, so that entity can monitor, audit and otherwise administer the employee health plan in which you participate. Your employer is not permitted to use the PHI we disclose for any purpose other than administration of your benefits. See your employer's health plan documents for information on whether your employer receives PHI and, if so, the identity of the employees who are authorized to receive your PHI.

**Information That May Be of Interest to You** – We may use or disclose your PHI to contact you about treatment options or alternatives that may be of interest to you. For example, we may call you to remind you of expired prescriptions or the availability of alternative drugs, or to inform you of other products that may benefit your health.

**Individuals Involved in Your Care or Payment for Your Care** – We may disclose PHI about you to someone who assists in or pays for your care. Unless you write to us and specifically tell us not to, we may disclose your PHI to someone who has your permission to act on your behalf. We will require this person to provide adequate proof that he or she has your permission.

**Parents or Legal Guardians** – If you are a minor or under a legal guardianship, we may release your PHI to your parents or legal guardians when we are permitted or required to do so under federal and applicable state law.

**Business Associates** – We arrange to provide some services through contracts with business associates so that they may help us operate more efficiently. We may disclose your PHI to business associates acting on our behalf. Business Associates are required by law and contract to protect the privacy of sensitive information. If any PHI is disclosed, we will protect your information from unauthorized use and disclosure using confidentiality agreements. Our business associates may, in turn, use vendors to assist them in providing services to us. If so, the business associates must enter into a confidentiality agreement with the vendor, which protects your information from unauthorized use and disclosure.

**Research** – Under certain circumstances, we may use and disclose PHI about you for research purposes. Before we use or disclose PHI about you, we will remove information that personally identifies you, obtain your written authorization or gain approval through a special approval process designed to protect the privacy of your PHI. In some circumstances, we may use your PHI to generate aggregate data (summarized data that does not identify you) to study outcomes, costs and provider profiles, and to suggest benefit designs for your employer or health plan. These studies generate aggregate data that we may sell or disclose to other companies or organizations. Aggregate data does not personally identify you.

**Abuse, Neglect or Domestic Violence** – We may disclose your PHI to a social service, protective agency or other government authority if we believe you are a victim of abuse, neglect or domestic violence. We will inform you of our disclosure unless informing you would place you at risk of serious harm.

**Public Health** – We may disclose your PHI for public health activities and purposes, such as regulatory reporting (e.g., reporting adverse events, vaccination efforts to avert the spread of communicable diseases) or for post-marketing surveillance in connection with FDA-mandates or product recalls. We may receive payment from a third party for making disclosures for public health activities and purposes.

**Judicial and Administrative Proceedings** – We may disclose your PHI in the course of any judicial or administrative proceeding in response to a court order, subpoena or other lawful process, but only after we have been assured that efforts have been made to notify you of the request.

**Law Enforcement** – We may disclose your PHI, as required by law, in response to a subpoena, warrant, summons or other appropriate process. In some circumstances, we may also disclose PHI to assist law enforcement with identification of relevant individuals, provide information about crime victims, provide information to law enforcement about decedents, and report a crime.

**Coroners and Medical Examiners** – We may disclose your PHI to a coroner or a medical examiner for the purpose of determining cause of death or other duties authorized by law.

**Organ, Eye and Tissue Donation** – We may disclose your PHI to organizations involved in organ transplantation to facilitate donation and transplantation.

**Workers' Compensation** – We may disclose your PHI to comply with workers' compensation laws and other similar programs.

**Fundraising** – We may use your PHI to send you fundraising communications, but you have the right to opt out of receiving such communications.

**Facility Directories** – We may use your PHI for purposes of maintaining contact information in a facility directory. Such information may include names, facility location, general information about conditions, and religious affiliation.

**Underwriting** – We may use or disclose your PHI for the purpose of underwriting and other activities relating to the creation, renewal or replacement of a contract of health insurance or health benefits. We are prohibited from using or disclosing PHI that is genetic information for such purposes.

**Specialized Government Functions, Military and Veterans** – We may disclose your PHI to authorized federal officials to perform intelligence, counterintelligence, medical suitability determinations, Presidential protection activities and other national security activities authorized by law. If you are a member of the U.S. Armed Forces or of a foreign military, we may disclose your PHI as required by military command authorities or law. If you are an inmate in a correctional institution or under the custody of a law enforcement official, we may disclose your PHI to those parties if disclosure is necessary for: the provision of your health care, maintaining the health or safety of yourself or other inmates, or ensuring the safety and security of the correctional institution or its agents.

**As Otherwise Required By Law** – We will disclose PHI about you when required to do so by law. If federal, state or local law within your jurisdiction offers you additional protections against improper use or disclosure of PHI, we will follow such laws to the extent they apply.

**Health Oversight** – We may disclose PHI to a health oversight agency performing activities authorized by law, such as investigations and audits. These agencies include governmental agencies that oversee the health care system, government benefit programs, and organizations subject to government regulation and civil rights laws.

**Creation of De-Identified Health Information** – We may use your PHI to create data that cannot be linked to you by removing certain elements from your PHI, such as your name, address, telephone number and member identification number. We may use this de-identified information to conduct certain business activities; for example, to create summary reports and to analyze and monitor industry trends.

**To Avert Serious Threat to Health or Safety** – We may disclose your PHI to prevent or lessen an imminent threat to the health or safety of another person or the public. Such disclosure will only be made to someone in a position to prevent or lessen the threat.

## Other Uses and Disclosures of PHI

**Uses of PHI That Require Your Authorization** – Most uses and disclosures of psychotherapy notes (where appropriate), uses and disclosures for marketing purposes and disclosures that constitute a sale of PHI require an authorization. These activities and any other uses and disclosures of your PHI not listed in this Notice will be made only with your authorization unless we are permitted by applicable law to make such other use and disclosure, in which case we shall comply with applicable law. You may revoke your authorization, in writing, at any time unless we have taken action in reliance upon it. Written revocation of authorization must be sent to the address listed below.

**Additional Protections for Certain Categories of PHI** – For certain kinds of PHI, federal and state law may provide for enhanced privacy protection. Such protections may apply to PHI that is maintained in psychotherapy notes; PHI involving alcohol and drug abuse prevention, treatment and referral; PHI concerning HIV/AIDS testing, diagnosis or treatment; PHI involving venereal and/or communicable disease(s); and PHI related to genetic testing.

## Your Rights With Respect To Your PHI

You have the following rights regarding the PHI we maintain about you.

**Right to Inspect and Copy** – Subject to some restrictions, you may inspect and copy PHI that may be used to make decisions about you, as well as records of enrollment, payment, claims adjudication, and case or medical management. If we maintain such records electronically, you have the right to request such records in electronic format. You may also have the records sent to a third party, including requesting that we share your PHI with a Health Information Exchange (HIE). If you request copies, we may charge reasonable expenses incurred with copying and mailing the records. Under limited circumstances, we may deny you access to a portion of your records.

**Right to Amend** – If you believe PHI about you is incorrect or incomplete, you may ask us to amend the information. You must provide a reason supporting your request to amend. We may deny the request in some instances. If we determine that the PHI is inaccurate, we will correct it if permitted by law. If a health care facility or professional created the information that you want to change, you should ask them to amend the information.

**Right to an Accounting of Disclosures** – You have the right to request an accounting of disclosures of your PHI. This accounting identifies the disclosures we have made of your PHI other than for treatment, payment or health care operations. The provision of an accounting of disclosures is subject to certain restrictions. For example, the list will exclude the following, among others.

- Disclosures to you as well as disclosures you have authorized
- Disclosures made earlier than six years before the date of your request (in the case of disclosures made from an electronic health record, this period may be limited to three years before the date of your request)
- Certain other disclosures that are excepted by law

If you request an accounting more than once during any 12-month period, we may charge you a reasonable fee for each accounting report after the first one.

**Right to Request Restrictions** – You have the right to request a restriction or limitation on the PHI we use and disclose about you for treatment, payment or health care operations. You may also request your PHI not be disclosed to family members or friends who may be involved in your care or paying for your care. Your request must be in writing; state the restrictions you are requesting and state to whom the restriction applies. We are not required to agree to your request. If we do agree, we will comply with your request unless the restricted information is needed to provide you with emergency treatment. We will agree to your request to restrict PHI disclosed to a health plan for payment or health care operations (that is, non-treatment) purposes if the information is about a medication for which you paid us, out-of-pocket, in full.

**Confidential Communications** – You may ask that we communicate with you in an alternate way or at an alternate location to protect the confidentiality of your PHI. Your request must state an alternate method or location you would like us to use to communicate your PHI to you.

**Right to Be Notified** – You have the right to be notified following a breach of unsecured PHI if your PHI is affected.

**Right to a Paper Copy of This Notice** – You have the right to request a paper copy of this Notice at any time. For information about how to obtain a copy of this Notice and answers to frequently asked questions, please call Customer Service at the telephone number printed on your customer ID card, or contact us toll-free at: **Cigna Customer Service: 1-800-244-6224** or **Evernorth Customer Service: 1-877-279-6391**

Even if we agreed to provide this Notice electronically, you are still entitled to a paper copy. You may obtain a copy of this Notice from our website at: **www.TheCignaGroup.com** or **www.Evernorth.com**.

**Right to File a Complaint** – If you believe we violated your privacy rights, you may address a written complaint to our Privacy Office at the contact below. You may also file a complaint with the Secretary of the U.S. Dept. of Health and Human Services. You will not face retaliation for filing a complaint.

Written complaints, revocation of authorization to use or disclose PHI, requests for a copy of your PHI, amendment to your PHI, an accounting of disclosures, restrictions on your PHI or confidential communications may be mailed to:

**The Cigna Group Privacy Office**
**PO Box 188014 Chattanooga, TN 37422**
**Email Cigna Healthcare: privacyoffice@cigna.com**
**Email Evernorth: privacy@express-scripts.com**

Please include your full name, address and customer ID number.

For certain types of requests, you must provide written documentation if applicable. Certain preference edits and forms are available on our website. For help, contact Customer Service at the telephone number printed on your Customer ID card or visit Cigna Healthcare online at: **https://www.Cigna.com/legal/members/member-privacy-forms**.

**We Reserve the Right to Revise this Notice** – A revised Notice will be effective for PHI we already have about you, as well as any PHI we may receive in the future. We will communicate revisions to this Notice through our websites **www.TheCignaGroup.com/PrivacyPolicy** or **www.Evernorth.com**.

**Effective Date** – This Notice is effective as of April 14, 2003, and updated as of October 19, 2023.

All Cigna products and services are provided exclusively by or through operating subsidiaries of Cigna Corporation, including Cigna Health and Life Insurance Company, Connecticut General Life Insurance Company, American Retirement Life Insurance Company, Cigna National Health Insurance Company, Loyal American Life Insurance Company, Evernorth Behavioral Health, Sterling Life Insurance Company, Cigna Health Management, Inc., and HMO or service company subsidiaries of Cigna Health Corporation, Evernorth Care Solutions, Inc., and Cigna Dental Health, Inc. The Cigna name, logo, and other Cigna marks are owned by Cigna Intellectual Property, Inc.

975526 10/23 © 2023 The Cigna Group.

# EXHIBIT B

some types of cookies. Click on the different category headings to find out more and change our default settings. However, blocking some types of cookies may impact your experience of the site and the services we are able to offer.

More information

## Manage Consent Preferences

+ **Functional Cookies**

+ **Performance Cookies**

– **Targeting Cookies**

These cookies may be set through our site by our advertising partners. They may be used by those companies to build a profile of your interests and show you relevant adverts on other sites. They do not store directly personal information, but are based on uniquely identifying your browser and internet device. If you do not allow these cookies, you will experience less targeted advertising.

+ **Essential Cookies**

**Confirm My Choices**