**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ERIN YATES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EVERNORTH HEALTH, INC. and MDLIVE, INC.,<br><br>Defendants. | Case No. 2:25-cv-02773-PD |

**DEFENDANTS EVERNORTH HEALTH, INC. AND MDLIVE, INC.'S**
**REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ... 1

II. ARGUMENT ... 1

A. Plaintiff Fails to Establish Article III Standing ... 1

B. Plaintiff's Conclusory and Inconsistent Allegations Fail to State a Claim for Which Relief May Be Granted ... 5

C. Plaintiff's ECPA Claim Should Be Dismissed ... 7

1. ECPA's Party Exception Applies ... 7

2. Plaintiff Pled Aiding and Abetting Allegations ... 9

D. Plaintiff's Claims Fail For Other Reasons ... 10

1. Plaintiff's Consent Defeats All Claims ... 10

2. Plaintiff Fails to Satisfy the Discovery Rule ... 11

3. Plaintiff Fails to Allege the "Contents" of Her Communications Were Disclosed ... 12

III. CONCLUSION ... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaya v. Bregman*,
186 F. Supp. 3d 1280 (D.N.M. 2016)....................10

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025)....................2, 3, 4

*Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*,
891 F. Supp. 2d 13 (D.D.C. 2012)....................10

*Delong v. PHE, Inc.*,
No. 24-5212, 2025 WL 2447787 (E.D. Pa. Aug. 25, 2025)....................2, 3, 4

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019)....................4

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015)....................7, 8, 12

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)....................9

*Hurley v. BMW of N. Am., LLC*,
No. 18-5320, 2020 WL 1624861 (E.D. Pa. Apr. 2, 2020)....................11

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)....................9

*Kurowski v. Rush Sys. for Health*,
No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)....................8

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y. 2006)....................10

*Lynch v. Express Scripts Holding Co.*,
No. 23-cv-01170-AMO, 2024 WL 3226793
(N.D. Cal. June 28, 2024)....................5

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
No. 22-4674, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024)................................8

*Murphy v. Thomas Jefferson University Hospitals, Inc*,
No. CV 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) ..........................6

*In re Nickelodeon Cons. Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........................................................................2, 4

*Okash v. Essentia Health*,
No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024)................................8

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019)...........................................................11

*In re Processed Egg Prods. Antitrust Litig.*,
931 F. Supp. 2d 654 (E.D. Pa. 2013)............................................................11

*Rand v. Eyemart Express LLC*,
No. 3:24-cv-000621-N, 2024 WL 4376162
(N.D. Tex. Oct. 1, 2024)..................................................................................7

*Santoro v. Tower Health*,
No. CV 22-5480, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024)..........................6

*Shefts v. Petrakis*,
954 F. Supp. 2d 769 (C.D. Ill. 2013) ............................................................10

*Smart v. Main Line Health*,
No. 22-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024) ............................6, 7

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 132 (D. Conn. 2014).............................................................10

*Washington v. Flixbus, Inc.*,
No. 3:25-cv-00212-H-MSB, 2025 WL 1592961
(S.D. Cal. June 5, 2025)..................................................................................11

*Commonwealth. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988) ........................................................................5, 9

**Statutes**

18 Pa. Cons. Stat. § 5704(4) ....................................................................................10

18 U.S.C. § 2511(2)(d)..........................................................................................7, 10

Defendants Evernorth Health, Inc. and MDLIVE, Inc. (together, "MDLIVE") submit this Reply in support of their Motion to Dismiss.

## I. INTRODUCTION

Plaintiff's opposition—like her complaint—offers only vague, generalized allegations. She never claims to have used the specific webpages where Online Technologies[1] are allegedly embedded. Plaintiff entirely ignores that two of the three technologies identified in the complaint are not even alleged to have deployed from MDLIVE's webpages, but instead from third-party sites she does not—and cannot—attribute to MDLIVE. She also cannot avoid the fact that MDLIVE's use of the very technologies at issue in the complaint was *repeatedly* disclosed and she consented to the same. Plaintiff's consent alone is dispositive of her claims under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq*., and the Pennsylvania Wiretapping Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons. Stat. § 5701 *et seq*. Plaintiff lacks Article III standing, and her conclusory and inconsistent allegations fail to satisfy Rule 8 or state a claim. The complaint should be dismissed in full.

## II. ARGUMENT

### A. Plaintiff Fails to Establish Article III Standing

Plaintiff argues that she need only allege the "unlawful disclosure of

[1] "Online Technologies" refers to the Google and Meta technologies Plaintiff puts at issue in her complaint. (*See, e.g.,* ECF No. 1 ("Compl.") ¶ 8.)

confidential information" to satisfy Article III. (*See* ECF No. 18 ("Opp.") at 8 (citing *In re Nickelodeon Cons. Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016).) Here, however, Plaintiff's bald allegations never connect her use of MDLIVE's services to the Online Technologies nor do they identify what "confidential information" (whatever it may be) was allegedly disclosed. Her vague description of "confidential, health-related information concerning her medical appointment" is insufficient. *Compare* Compl. ¶ 8, *with In re Nickelodeon*, 827 F.3d at 269 (finding standing where plaintiffs specifically identified the types of information collected about plaintiffs and described how the website's cookies gathered it). Plaintiff's conclusory allegations cannot establish Article III standing. *See Cook v. GameStop, Inc.*, 148 F.4th 153, 158 (3d Cir. 2025).

Moreover, the Third Circuit has squarely rejected Plaintiff's argument that a purported wiretapping violation, without more, suffices to show concrete injury, holding that "[a]n alleged statutory violation is not necessarily an injury in fact; 'a concrete injury' is still required." *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021)); *see Delong v. PHE, Inc.*, No. 24-5212, 2025 WL 2447787, at *4 (E.D. Pa. Aug. 25, 2025) ("[E]ven assuming that [plaintiff] stated a claim under WESCA, that alone does not answer the standing question."). Intangible harms are concrete for purposes of Article III only if they have a "close relationship" with traditionally recognized harms. *GameStop*, 148 F.4th at 158.

And "affording claimants standing for intangible injuries is not 'an open-ended invitation to loosen Article III based on contemporary, evolving beliefs[.]'" *Delong*, 2025 WL 2447787, at *2 (quoting *TransUnion*, 594 U.S. at 424-25).

*Delong* illustrates the point. There, the plaintiff alleged that a defendant's website collected sensitive information about his sexual activities, interests, and preferences. But the court held he had no reasonable expectation of privacy, noting that "[i]t is widely understood that most online activity is not entirely private," and no explicit privacy promises were broken. *Id.* at *3, *5. Thus, like here, the alleged use of Online Technologies was not "highly offensive" given the general understanding that "most online activity is not entirely private" and no privacy promises were broken. *Id.* at *5-6; *see also GameStop*, 148 F.4th at 156, 160, 163 (dismissing WESCA claim for lack of standing because "[m]ost of us understand that what we do on the Internet is not completely private").

As in *Delong*, Plaintiff's attempt to analogize her claims to the common law tort of intrusion upon seclusion is unavailing. (*See* Opp. at 15-16.) The issue is not whether intrusion upon seclusion is a cognizable injury under Article III (*see* Opp. at 6-8), but whether Plaintiff's allegations have a sufficiently close relationship to the harm traditionally associated with intrusion upon seclusion. *See Delong*, 2025 WL 2447787, at *4. They do not. *See id.* at *4-5. Plaintiff cannot claim a reasonable expectation of privacy in her online interactions where MDLIVE

*repeatedly* disclosed its use of the very technologies she challenges. (*See* ECF No. 10 ("MTD") at 5-8); *see also GameStop*, 148 F.4th at 162. Nor can Plaintiff allege that the purported use of the technologies disclosed to her caused anything like the "mental suffering, shame[,] or humiliation" that intrusion upon seclusion requires. *See Delong*, 2025 WL 2447787, at *5. Plaintiff alleges no harm at all. She alleges no facts showing any injury, or that MDLIVE's alleged use of technologies disclosed to her caused a "highly offensive intrusion that violated [her] reasonable expectation of privacy." *Id*.

This case stands in stark contrast to those where courts found a reasonable expectation of privacy based on website operators' unkept promises not to disclose user activity. Here, Plaintiff was on notice that MDLIVE used Online Technologies, but she filed suit anyway. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 324-25 (3d Cir. 2019) ("*Google II*"); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 293-95; *GameStop*, 148 F.4th at 162 ("[T]he allegations in [*Google II*] and *Nickelodeon* were . . . distinguishable from this case . . . because the 'plaintiffs alleged that a third party . . . tracked their personal internet browsing information in violation of the third party's own promises not to do so.'") (quoting *Google II*, 934 F.3d at 325). Plaintiff's claims should be dismissed for lack of Article III standing. *See Delong*, 2025 WL 2447787, at *5; *GameStop*, 148 F.4th at 162.

### B. Plaintiff's Conclusory and Inconsistent Allegations Fail to State a Claim for Which Relief May Be Granted

The complaint should be independently dismissed because Plaintiff's contradictory and conclusory allegations are insufficient to give MDLIVE fair notice of Plaintiff's claims and the grounds upon which they rest.

***First***, Plaintiff now asserts in her opposition that MDLIVE itself intercepted her information. (*See* Opp. at 12.) But her complaint tells a different story. In some places, she alleges third parties intercepted communications. (*See* Compl. ¶ 26 ("Defendants' unlawful conduct resulted in **third parties intercepting** information . . . .") (emphasis added). Elsewhere, she alleges MDLIVE did the intercepting. (*Id*. ¶ 83 ("**Defendants intercepted** its patients' confidential information . . . .") (emphasis added).) Plaintiff's inconsistent allegations do not satisfy Rule 8. *See Lynch v. Express Scripts Holding Co.*, No. 23-cv-01170-AMO, 2024 WL 3226793, at *1 (N.D. Cal. June 28, 2024) (dismissing claims for failure to "consistently allege the identity of the company responsible for the interception that is the subject of [plaintiff's] complaint"); *Commonwealth. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint.").

***Second,*** courts routinely dismiss wiretapping claims where plaintiffs, as here, fail to plead facts showing that they entered personal information into

webpages embedded with the technologies at issue, or that any such information was disclosed. In this regard, there is no material difference between Plaintiff's complaint and those dismissed for failure to state a claim in *Smart v. Main Line Health*, No. 22-5239, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024), *Santoro v. Tower Health*, No. CV 22-5480, 2024 WL 1773371, at *3-5 (E.D. Pa. Apr. 24, 2024), or *Murphy v. Thomas Jefferson University Hospitals, Inc*, No. CV 22-4674, 2023 WL 7017734, at *1-3 (E.D. Pa. Oct. 10, 2023).[2]

Here, Plaintiff alleges that the dermatology flow includes Online Technologies (Compl. ¶¶ 80-89), but she never alleges that ***she*** used that flow or even visited those webpages. Instead, she claims it is enough to allege that she visited MDLIVE's website, searched for unspecified treatment options, and scheduled an unidentified medical appointment. (Opp. at 10; *see* Compl. ¶ 8.) In essence, Plaintiff relies only on the allegation that MDLIVE is *capable* of collecting protected health information. (*See, e.g.,* Compl. ¶¶ 31-79.) But just like in *Smart*, Plaintiff does not "allege[] which specific web pages [s]he clicked on" or that the Online Technologies were used on the pages that ***she*** clicked on (whatever they may be). 2024 WL 2943760, at *3. Plaintiff fails to allege what information,

[2] The discussion of *Smart*, *Santoro*, and *Murphy* was mistakenly framed on standing grounds in MDLIVE's motion to dismiss. (MTD at 11-12.) Plaintiff also appears to address the cases in the context of standing. (Opp. at 11.) These cases, however, dismissed inadequately pled claims under Rule 12(b)(6). The same result should follow here.

if any, ***she*** communicated to MDLIVE, the specific webpages ***she*** clicked on, ***her*** treatment history with MDLIVE, and the information ***she*** provided that was purportedly disclosed. (*See generally* Compl.) This key disconnect between the allegations regarding webpages using Online Technologies and Plaintiff's conclusory, generalized allegations about **her** use of MDLIVE's services renders her complaint "insufficient to withstand dismissal." *Smart*, 2024 WL 2943760, at *1-3; *see also Rand v. Eyemart Express LLC*, No. 3:24-cv-000621-N, 2024 WL 4376162, at *3 (N.D. Tex. Oct. 1, 2024) ("Plaintiffs have not sufficiently alleged that they entered any personal health information into the website").

### C. Plaintiff's ECPA Claim Should Be Dismissed

#### 1. ECPA's Party Exception Applies

Plaintiff now claims that she is alleging that ***MDLIVE***—as opposed to Google or Meta—is intercepting communications coming to its own website. (Opp. at 12.) But ECPA exempts from liability a "party to the communication." 18 U.S.C. § 2511(2)(d). And "the intended recipient of a communication is necessarily one of its parties[.]" *In re Google Inc. Cooke Placement Consumer Privacy Litig.*, 806 F.3d 125,143 (3d Cir. 2015) ("*Google I*"). As Plaintiff concedes, MDLIVE is a party to any communication with its website, and the party exception forecloses her ECPA claim.

Plaintiff attempts to avoid this clear prohibition by leaning into ECPA's

crime-tort exception, which would negate the party exception. (Opp. at 14-15.) But for the crime-tort exception to apply, the ***purpose*** of the purported interception must be to carry out a tortious or criminal act, and this alleged tortious or criminal act must be "***independent*** of the intentional act of recording." *Google I*, 806 F.3d at 145 (emphasis added). That "independent" act and "purpose" do not exist. Plaintiff cannot state an ECPA claim merely by alleging that MDLIVE is a covered entity subject to HIPAA. Because "neither the alleged HIPAA nor privacy violations were independent of the interception, the crime-tort exception does not apply." *Okash v. Essentia Health*, No. 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (dismissing similar ECPA claim asserted against covered entity under party exception).

Plaintiff's threadbare allegations are also insufficient to plead a potential HIPAA violation. (*Contra* Opp. at 13-14.) The cases Plaintiff cites involve detailed allegations identifying the *plaintiffs'* "individually identifiable health information" purportedly intercepted. *See, e.g.*, *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-4674, 2024 WL 4350328, at *1,*4 (E.D. Pa. Sept. 30, 2024) (alleging transmission of detailed provider, symptoms, treatment, diagnosis, insurance information, and messages exchanged in the patient portals); *Kurowski v. Rush Sys. for Health,* No. 22 C 5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (alleging transmission plaintiff's physician information, specialty, and health

conditions).

By contrast, Plaintiff alleges only that she clicked a link for telehealth services, searched for treatment, and scheduled an appointment—without saying what specific information was disclosed. (Compl. ¶ 8.) Such vague assertions do not plausibly raise a HIPAA violation. Courts have rejected similarly thin claims, emphasizing that the "dearth of information specific to ***Plaintiff***" defeats any claim of a HIPAA violation. *Hartley v. Univ. of Chicago Med. Ctr.,* No. 22 C 5891, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (emphasis added); *see Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) (finding allegations of HIPAA violations too ambiguous to allow an inference to be drawn that defendants actually disclosed data within HIPAA's purview). Plaintiff's ECPA claim should be dismissed.

**2. Plaintiff Pled Aiding and Abetting Allegations**

Given the authority precluding "aiding and abetting" liability under ECPA, Plaintiff responds by mischaracterizing her ECPA claim to assert it is not based on aiding and abetting. (Opp. at 16-18.) As is clear from the complaint, Plaintiff repeatedly alleges Meta and Google intercepted Plaintiff's communications, rather than MDLIVE. (Compl. ¶¶ 6, 8, 33, 35, 48, 50, 54, 72, 73, 82, 84, 87, 88.) Plaintiff's complaint, and not her opposition or other briefs, controls. *See Com. of Pa. ex rel. Zimmerman*, 836 F.2d, at 181.

Plaintiff also argues that her ECPA claim is not premised on aiding and abetting liability because she alleges that MDLIVE ***procured*** Meta and Google to intercept her communications. (Opp. at 16.) Plaintiff points to two outlier cases that suggest, in dicta, that "procurement" within the context of ECPA does not constitute aiding and abetting. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132 (D. Conn. 2014); *Lonegan v. Hasty*, 436 F. Supp. 2d 419 (E.D.N.Y. 2006). Such reasoning ignores Congressional intent. *See Shefts v. Petrakis*, 954 F. Supp. 2d 769, 775-777 (C.D. Ill. 2013) (declining to adopt *Lonegan*); *Amaya v. Bregman,* 186 F. Supp. 3d 1280 (D.N.M. 2016) (declining to adopt *In re Trilegiant Corp*). These cases run counter to a clear majority position, acknowledged for over a decade, that the plain language of ECPA does not extend to "procurement." *See Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz,* 891 F. Supp. 2d 13, 24 (D.D.C. 2012) (collecting cases). The Court should follow the majority rule.

### D. Plaintiff's Claims Fail for Other Reasons

#### 1. Plaintiff's Consent Defeats All Claims

Because Plaintiff cannot overcome her consent to the use of Online Technologies, she conflates unrelated health-privacy statutes with the requirements of ECPA and WESCA. (*See* Opp. at 18-19.) ECPA and WESCA, the only statutes under which Plaintiff sues, require only "prior consent" of one (ECPA) or both (WESCA) parties. 18 U.S.C. § 2511(2)(d); 18 Pa. Cons. Stat. § 5704(4). MDLIVE

disclosed its use of Online Technologies, and Plaintiff consented. (MTD at 18-21.)

Plaintiff next argues that consent is a question for summary judgment, citing *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108 (W.D. Pa. 2019). (Opp. at 20-21.) But *Popa* is distinguishable: there, the consent was unclear, creating a material factual issue. *See* 426 F. Supp. at 119. Here, there is no dispute: Plaintiff does not dispute that logging into myCigna or MDLIVE required her to agree to privacy notices that disclosed the use of Online Technologies, and those notices were also embedded in the footer of the webpages at issue. (*See* MTD at 5-8.) Plaintiff's consent is dispositive. Courts routinely dismiss wiretapping claims on consent grounds. *See, e.g.*, *Washington v. Flixbus, Inc.*, No. 3:25-cv-00212-H-MSB, 2025 WL 1592961, at *4-6 (S.D. Cal. June 5, 2025) (dismissing wiretapping claims with prejudice based on agreement to conspicuous privacy policy).

**2. Plaintiff Fails to Satisfy the Discovery Rule**

Plaintiff invokes the discovery rule to excuse her untimely claims. (Opp. at 21-22.) That effort fails. To rely on the discovery rule, she must allege a tolling date. *See In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654, 658-59 (E.D. Pa. 2013) (collecting cases). Plaintiff does not; her complaint is silent as to when she learned of her alleged injury. (*See generally* Compl.) Absent such an allegation, she cannot establish that her claim fails within the limitations period. *See Hurley v. BMW of N. Am., LLC*, No. 18-5320, 2020 WL 1624861, at *9 (E.D.

Pa. Apr. 2, 2020) ("[W]here the discovery rule tolls the statute of limitations until a certain date of discovery, a plaintiff must allege the specific date on which she learned of her injury.") (cleaned up). In any event, Plaintiff was on notice of Online Technologies the first time she logged into the authenticated environment. Any later use ties back to that original notice—where consent was already given.

#### 3. Plaintiff Fails to Allege the "Contents" of Her Communications Were Disclosed

Plaintiff attempts to repackage URLs as "content," citing *Google I*. But as noted in MDLIVE's motion (MTD at 24), URLs qualify as content only when they reveal the actual substance of a user's communication—such as search terms or specific content viewed. *See Google I*, 806 F.3d at 138. Nowhere does Plaintiff's complaint allege that Online Technologies captured URLs revealing *her* specific search terms or user-entered content. (*See generally* Compl.) Instead, she offers only a generalized assertion that Online Technologies captured "[URLs] that disclosed the telehealth treatment or services being sought by the patient" (Compl. ¶ 54), without identifying details about the content of *her* particular searches or communications. At most, Plaintiff alleges record information, which cannot support a claim under ECPA and WESCA. *See Google I*, 806 F.3d at 139.

## III. CONCLUSION

For the reasons stated above and outlined in MDLIVE's motion to dismiss, Plaintiff's complaint should be dismissed in its entirety, without leave to amend.

Dated: September 22, 2025

By: */s/ Katherine E. Driscoll*

Katherine E. Driscoll (328688)
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
KDriscoll@mofo.com

TIFFANY CHEUNG (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: TCheung@mofo.com

ELISABETH HUTCHINSON (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado 80202-5638
Telephone: (303) 592-1500
Email: EHutchinson@mofo.com

JOE NGUYEN (93638)
BRIDGET C. GIROUD (321289)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street
Suite 2600
Philadelphia, PA 19103
Telephone: (215) 564-8000
Email: JNguyen@stradley.com
Email: BGiroud@stradley.com

*Counsel for Defendants*
*Evernorth Health, Inc. and MDLIVE, Inc.*

**CERTIFICATE OF SERVICE**

I, Katherine E. Driscoll, hereby certify that on September 22, 2025, the foregoing document was filed electronically with the Clerk of the Court using the ECF system. This document is available for reviewing and downloading from the ECF system.

*/s/ Katherine E. Driscoll*
Katherine E. Driscoll

MF-360820969